**UNITED STATES of America**

v.

**Anthony DELAGO, Defendant.**

**No. 72 CR. 280.**

United States District Court, S. D. New York.

June 11, 1974.

Paul J. Curran, U. S. Atty., by James E. Nesland, New York City, for United States.

Roy M. Cohn, Michael Rosen, Saxe, Bacon, Bolan & Manley, New York City, for defendant.

*Memorandum Opinion and Order*

MOTLEY, District Judge.

Defendant, Anthony Delago, pleaded guilty to the charges of illegal gambling, 18 U.S.C. § 1955, New York Penal Law §§ 225.05 and 225.15, McKinney's Consol.Laws, c. 40, as charged in indictment 72 Cr. 280. He was sentenced on April 29, 1973 to a term of one year, four months in custody and the remaining eight months on probation. His probation was made subject to the standing probation order of the court, and special conditions annexed thereto, a copy of which is attached as Appendix A.

On August 24, 1973 the defendant was released from custody and commenced his eight-month probationary period under the direct supervision of probation officer Victor Tyne. Some months later the Probation Office filed a petition alleging that Delago had violated the terms of his probation by having possession of gambling records on March 13, 1974. That petition was based on the probation officer's report (Govt.Exh. 3501) to that effect. On March 26, 1974 the court issued a bench warrant com-

manding Delago's arrest for violation of probation. The defendant denied the charges at his arraignment.

At a hearing held before this court on April 23, 1974 defendant moved to suppress 1) the gambling records as fruits of an unconstitutional search and seizure and 2) certain statements made by defendant to officer Tyne as having been obtained in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). At the hearing officer Tyne testified to the facts and circumstances underlying the probation violation charged. For the reasons which follow, the defendant's motion to suppress is denied and the court further finds that defendant violated the terms of his probation. The probationary status of defendant is hereby terminated and the defendant is directed to appear for sentencing on Thursday, June 27, 1974 at 11:00 A.M. in Courtroom 102.

## FACTUAL BACKGROUND

### The Search, Seizure and Oral Statements

In the course of his duties as probation officer, Tyne visited the defendant's residence at 7 Drew Street, Port Chester, New York on January 23, 1974. Tyne was greeted by an individual, later identified as John Bolagna, a convicted gambler, and was told that the defendant was away on vacation. Tyne left a message that Delago should call him upon his return, whereupon Tyne left. In response to Tyne's message, the defendant came to the probation office on January 29, 1974. At that time the defendant identified Bolagna and further told Tyne that he had instructed Bolagna to turn away all visitors since the defendant feared they might be bill collectors.

Tyne testified that on March 13, 1974, he made a return visit to the defendant's residence. As Tyne approached 7 Drew Street he observed two individuals arrive in an automobile and park opposite Delago's residence. One of the two men walked quickly between 7 Drew Street and the adjacent house in the direction of the entrance to Delago's residence which was located at the rear of 7 Drew Street. When Tyne left his car and began to walk towards 7 Drew Street he glanced at the individual who had remained behind in the car. That individual then shielded his face from view with his open hand. As Tyne proceeded down the alleyway near Delago's house, he met the first individual whom he had earlier seen briskly heading for Delago's door. That individual paused slightly as Tyne passed. Glancing back, Tyne noticed that the individual had paused to watch him. Thereafter, Tyne reached the entrance to Delago's residence.

As Tyne reached Delago's place he either rang a bell or knocked and was met by an individual later identified as Angelo Lovallo. When Tyne asked to see Delago he was told to wait. As Lovallo walked away from the door he could be seen talking with someone other than the defendant. Tyne stepped just inside from which point he could see the defendant, Lovallo, and a third person later identified as Mike Cicarella.

Tyne proceeded into the living room and greeted Delago. Tyne next noticed a newspaper folded into a rectangular packet, secured by a rubber band, on a table. Tyne asked Delago to bring it to him, whereupon Lovallo immediately removed the newspaper from the table and concealed it on his person, possibly in his back pocket. Lovallo then replied, "What newspaper?" and further demanded that Tyne identify himself. In response, Tyne gesturing toward Delago told Lovallo, "He knows who I am." Tyne stated at the hearing that it was for the benefit of the defendant, who might be embarrassed by the revelation, that Tyne refused to identify himself. Tyne demanded the paper several more times. Lovallo pivoted away from Tyne and somewhat obviously removed the contents from inside the newspaper,

handed the empty newspaper to Delago who, in turn, passed it on to Tyne. Tyne asked to see the contents which had been removed. At that point, Lovallo approached him and, as Lovallo faced him, Tyne noticed a bulge, which he feared might be a weapon, in Lovallo's front pocket. Tyne then drew his gun and demanded the contents. Delago intervened at this point. He went to Lovallo, secured the envelope from him and handed the envelope to Tyne. Upon examination, it was discovered that the envelope contained gambling records, identified by the defendant as "plays." Tyne instructed Delago to get into his, Tyne's car, saying that they were "going for a ride." It is the contents so obtained which defendant seeks to have suppressed.

After Tyne and Delago went to Tyne's car, they drove away from 7 Drew Street. During the drive, Delago admitted, in response to Tyne's questioning, that the envelope contained "plays" which had been delivered to him. Tyne advised the defendant that the incident would have to be reported to the court as a possible basis for probation revocation. Thereafter, Tyne drove back to Delago's residence and dropped him off. It is this statement, made without benefit of *Miranda* warnings, which defendant seeks to have suppressed.

### LEGAL CONCLUSIONS

*Tangible Evidence*

 The court concludes that there was probable cause to support Tyne's search and seizure of the "plays". The factors which, taken together, constitute probable cause in the instant case include the following:

1) that the defendant was known to Tyne to be a convicted gambler;

2) that the defendant while on probation was associating with convicted gamblers, on at least one occasion (i. e. January 23, 1974);

3) that Tyne had been refused entry to defendant's residence on January 23, 1974 for dubious reasons;

4) that Tyne, under an obligation to aid defendant in meeting the conditions of his probation, one of which was to obey state and federal laws, went to defendant's residence, on March 13, 1974, and to Tyne's trained eye, the behavior of the two individuals whose visit preceded his on that date was suspicious;

5) that Tyne's reception and the events which preceded his entry into the living room reasonably put him on notice that a crime had been or was about to be committed;

6) and, that Lovallo's secretive behavior with regard to the newspaper and its contents suggested the contents might be contraband or other evidence of crime.

Since this sequence of events constituted the legally sufficient probable cause on which Tyne proceeded, the seizure of the evidence (marked at the hearing as Government Exhibit 1 for identification) was performed in a manner consistent with the Fourth Amendment to the United States Constitution. The evidence, concededly gambling "plays", having been legally obtained, the defendant's motion to have the exhibit suppressed, in accordance with the exclusionary rule of *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) is denied.[1]

---

1. The court concludes at p. 712, *infra*, that the exclusionary rule is inapplicable to probation violation hearings. However, even if it were applicable and even if the probation officer lacked probable cause in this case, it would appear that less than probable cause would justify a search by a probation officer. *See United States ex rel. Santos v. New York State Board of Parole*, 441 F.2d 1216 (2d Cir. 1971), *cert. denied*, 404 U.S. 1025, 92 S.Ct. 692, 30 L.Ed.2d 676 (1972), (constitutionality of search by parole officer).

**712**

*Oral Statements*

Defendant also seeks to exclude his admission to probation officer Tyne that the "plays" had been delivered to him. Defendant claims that, insofar as he was not advised of his rights under *Miranda,* any statements made in response to Tyne's questioning, while defendant's liberty was significantly restrained as the two of them drove around the neighborhood in Tyne's car, were obtained in violation of his Fifth Amendment rights and therefore inadmissible. The court concludes that Tyne's failure to advise Delago in accordance with *Miranda* was, under the facts of this case, of no consequence.

■ Delago, a sentenced defendant on probation, retains those rights of an ordinary citizen as are compatible with his probationary status. Certain rights, however, are necessarily impaired. This is so because the defendant expressly agrees to be subject to the supervision and surveillance appropriate to a probationer, to avoid the more onerous regimen of a prisoner. Indeed, the Second Circuit has said that for some purposes a probationer is "in custody". *United States ex rel. B. v. Shelly,* 430 F.2d 215, 218 n. 3 (2d Cir. 1970).

■ One of the "Conditions of Probation" to which the defendant consented was, in part, that he would "promptly and truthfully answer all inquiries directed to [him] by the Probation Officer." (Appendix A) As Judge Frankel suggested in a case in which a probationer asserted a similar claim of privilege to justify his refusal to report his source of income to his probation officer, the privilege against self-incrimination is fundamentally inconsistent with the acquisition and maintenance of probationary status. *United States v. Manfredonia,* 341 F.Supp. 790, 795 (S.D.N.Y.), *aff'd per curiam,* 459 F.2d 1392 (2d Cir.), *cert. denied,* 409 U.S. 851, 93 S.Ct.

61, 34 L.Ed.2d 93 (1972). Since the privilege against self-incrimination was not available to the defendant in answering the questions put to him by his probation officer, there was no necessity to give *Miranda* warnings. This being so, the admission made to Tyne by the defendant was legally obtained, and therefore admissible as evidence against the defendant at his probation revocation hearing.

In any event, the exclusionary rule has no application to probation violation hearings.[2] The Second Circuit has held that the exclusionary rule is inapplicable to parole revocation proceedings. *United States ex rel. Sperling v. Fitzpatrick,* 426 F.2d 1161 (2d Cir. 1970). The court held that, in the absence of a showing of harassment, "[t]here is no need for double application of the exclusionary rule, using it first . . . in preventing criminal prosecution of the parolee and a second time at a parole revocation hearing. The deterrent purpose of the exclusionary rule is adequately served by the exclusion of the unlawfully seized evidence in the criminal prosecution." *Id.* at 1164.

■ Probation and parole revocation proceedings are constitutionally indistinguishable. *See Gagnon v. Scarpelli,* 411 U.S. 778, 782, n. 3, 93 S.Ct. 1756, 36 L. Ed.2d 656 (1973) (authorities collected). Since the prime purpose of the exclusionary rule is to deter unlawful police conduct, *e. g., United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), and there is no reason to suppose that the exclusionary rule would have a greater deterrent effect in probation revocation hearings than in parole revocation proceedings, *Sperling, supra,* governs probation violation hearings. *See United States v. Hill,* 447 F.2d 817 (7th Cir. 1971).

■ The motion to suppress the tangible evidence and the oral statement is

**2.** Although *Sperling* dealt with exclusion of tangible evidence, the reasoning expressed in that opinion seems equally applicable to oral statements.

denied. The court concludes that the defendant has violated the conditions of probation by having possession of illegal gambling records, and the petition for revocation is, accordingly, granted.

So ordered.

## APPENDIX "A"

Probation Form No. 7
(February 1964)

Conditions of Probation

### UNITED STATES DISTRICT COURT
### FOR THE
### SOUTHERN DISTRICT OF NEW YORK

To ———————————— Docket No.

Address ————————————

In accordance with authority conferred by the United States Probation Law, you have been placed on probation this date, ,
for a period of by the Hon. United States District Judge, sitting in and for this District Court at New York City, subject to the standing probation order of this Court. (See other side).

#### CONDITIONS OF PROBATION

It is the order of the Court that you shall comply with the following conditions of probation:

(1) You shall refrain from violation of any law (federal, state, and local). You shall get in touch immediately with your probation officer if arrested or questioned by a law-enforcement officer.

(2) You shall associate only with law-abiding persons and maintain reasonable hours.

(3) You shall work regularly at a lawful occupation and support your legal dependents, if any, to the best of your ability. When out of work you shall notify your probation officer at once. You shall consult him prior to job changes.

(4) You shall not leave the judicial district without permission of the probation officer.

(5) You shall notify your probation officer immediately of any change in your place of residence.

(6) You shall follow the probation officer's instructions and advice.

(7) You shall report to the probation officer as directed.

The special conditions ordered by the Court are as follows:

In order to insure compliance with the Conditions of Probation, you may NOT serve as an informer while on probation, and you must promptly and truthfully answer all inquiries directed to you by the Probation Officer.

I understand that the Court may change the conditions of probation, reduce or extend the period of probation, and at any time during the

probation period or within the maximum probation period of 5 years permitted by law, may issue a warrant and revoke probation for a violation occurring during the probation period.

I have read or had read to me the above conditions of probation. I fully understand them and I will abide by them. These conditions were made an Order of this Court, June 6, 1932. (See copy attached).

(Signed) —————————— ——————————
 Probationer Date

You will report as follows:

[APPENDIX "A"]

—————————— ——————————
 U. S. Probation Officer Date

At a Stated Term of the District Court of the United States held in and for the Southern District of New York, in the United States Courthouse, in the Borough of Manhattan, City of New York on the 6th day of June, 1932.

PRESENT:

THE HONORABLES JOHN C. KNOX, HENRY W. GODDARD, WILLIAM BONDY, FRANK J. COLEMAN, JOHN M. WOOLSEY, FRANCIS G. CAFFEY, ALFRED C. COXE, ROBERT P. PATTERSON

| | |
|---|---|
| IN THE MATTER<br>OF<br>GENERAL CONDITIONS OF PROBATION<br>where execution of sentence in criminal cases<br>is suspended. | M–11–183<br>ORDER |

Due deliberation having been had, it is

ORDERED, that effective June 7, 1932, the following shall be the conditions of probation applicable to all persons placed on probation by this Court.

1. The probationer shall not violate any State or Federal Penal Law.

2. He shall live a clean, honest, and temperate life.

3. He shall not frequent undesirable places and localities, nor shall he associate with undesirable persons.

4. He shall seek and continue in steady employment and shall immediately notify the Probation Officer of any change in or cessation of employment.

5. Upon change of residence, he shall notify the Probation Officer.

6. He shall not leave the jurisdiction of this Court without permission of the Probation Officer.

7. He shall contribute regularly to the support of those whom he is legally bound to support.

8. He shall follow the Probation Officer's instructions and advice regarding his recreational and social activities.

9. He shall report at such times and places as the Probation Officer shall direct.

10. He shall obey such other conditions as may be imposed by the Probation Officer to insure compliance with the foregoing provisions in paragraphs 1 to 9 inclusive.

Acceptance of probation by the defendant shall constitute acceptance of the conditions hereinabove set forth.

JOHN C. KNOX
U.S.D.J.

FILED
U. S. DISTRICT COURT
JUNE 8, 1932
S. D. of N. Y.

HENRY W. GODDARD
WILLIAM BONDY
FRANK J. COLEMAN
JOHN M. WOOLSEY
FRANCIS G. CAFFEY
ALFRED C. COXE
ROBERT P. PATTERSON