No. 23460.

GARY ALLEN GILMORE *v*. THE PEOPLE OF THE STATE OF COLORADO.
(467 P.2d 828)

Decided April 6, 1970.

Benton S. Clark, Jr., for plaintiff in error.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, George E. DeRoos, Assistant, for defendant in error.

*In Department.*

Opinion by MR. CHIEF JUSTICE McWILLIAMS.

GARY ALLEN GILMORE, hereinafter referred to as the defendant, was convicted by a jury of simple assault (C.R.S. 1963, 40-2-33) and unnatural carnal copulation (C.R.S. 1963, 40-2-31). The defendant was thereafter sentenced to six months in the county jail on the assault charge and to a term in the state penitentiary for his conviction on the charge of unnatural carnal copulation. By the present writ of error the defendant seeks reversal of his conviction on the charge of unnatural carnal copulation.

The defendant was charged with committing unnatural carnal copulation per os in and upon one Mary E. by placing his mouth on the vagina of Mary E. Upon trial Mary E. testified concerning the assault made upon her by the defendant and without going into detail her testimony supported the material allegations in this particular count of the information.

Perhaps the basic reason advanced here by the defendant as to why his conviction should be reversed is that C.R.S. 1963, 40-2-31 is claimed to be unconstitutionally vague and, alternatively, that the statute does not include cunnilingus.

C.R.S. 1963, 40-2-31 reads as follows:

"*Crime against nature.* — (1) the infamous crime against nature, with man or beast, *or any unnatural carnal copulation committed per anus or per os or in any other way whatsoever* shall subject the offender to be imprisoned in the state penitentiary for a term of not less than one year and not more than fourteen years." (Emphasis added.)

In *Koontz v. People*, 82 Colo. 589, 263 P. 19 it was held that an "insertion per os did not constitute sodomy, the infamous crime against nature." The statute involved in the *Koontz* case was subsequently amended to include the underlined language in the statute set forth immediately above. By this amendment it would certainly seem

to be the legislative intent that the statute be broadened and made more all-inclusive in scope. In line with such legislative intent, we hold that cunnilingus comes well within the conduct denounced by C.R.S. 1963, 40-2-31. In support of our holding see, for example, *People v. Hunter*, 158 Cal. App.2d 500, 322 P.2d 942 and *People v. Harris*, 108 Cal. App.2d 84, 238 P.2d 158, where it was held that the defendant was guilty of committing the offense of copulating by mouth when he placed his mouth on the sexual organ of the presecutrix.

█ █ Nor do we deem the particular part of the statute with which we are here concerned, namely, unnatural carnal copulation per os, to be unconstitutionally vague. On the contrary the statute in its amended form is most definite in nature. And certainly the information, the material portions of which are set forth above, did apprise the defendant in very understandable English of the precise nature of his alleged misconduct. In support of this determination see, for example, *State v. Bonanno*, 245 La. 1117, 163 So.2d 72 where the sodomy statute of Louisiana was held not to be unconstitutionally vague.

The defendant also urges as ground for reversal the reception into evidence, over objection, of certain statements allegedly made by the defendant to the witness Fuller, a Federal probation officer. In this regard it is asserted that *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 dictates a reversal. A bit of detail is necessary in order to place this matter in focus. Shortly after the assault, which occurred about 1:45 p.m., Mary E. was shown by the police five photographs of different persons answering the general description given by Mary E. of her assailant. She identified the defendant's photograph as being that of her assailant. On the same day police took the defendant into custody at about 4:45 p.m. as he was returning to his home. En route to the police station the arresting officers advised the defendant of his so-called *Miranda* rights. At the police station the defendant made inquiry as to the reason for his arrest.

When informed that it was in connection with the assault of Mary E. the defendant denied all knowledge of any such assault.

The defendant at the time was either on parole or probation in connection with a federal conviction on a felony charge, and the defendant's probation officer was one John Fuller. The fact that the defendant had suffered a prior felony conviction was carefully avoided by the district attorney and was in nowise brought to the attention of the jury. Nor was the nature of Fuller's employment brought out by the district attorney. However, Fuller was called as a witness by the People. Prior thereto another witness for the People, Officer Gieck, testified that soon after the defendant had been brought to the police station — at a time shortly after he had been advised of his *Miranda* rights and had denied any knowledge or participation in the assault on Mary E. — the defendant informed the officer that he (the defendant) wanted to speak to John Fuller.

Fuller testified that he arrived at the police station on the day in question about 6:25 p.m. He was taken immediately by officer Gieck and a fellow police officer to an interrogation room. The defendant was either already in the particular room or was brought there at once. Apparently brief conversation ensued during which the defendant reiterated his statement that he had no connection with the assault. The defendant then informed all that he wanted to talk with Fuller alone and the two police officers left. According to Fuller, who stated that he informed the defendant that he (Fuller) "wasn't questioning him," the defendant nevertheless then made certain statements to him, which statements if not a complete confession were admissions against interest. These statements were along the line of "I have to be sick or I wouldn't have done these things . . . this day and the other ones too." Fuller testified that his brief conversation with the defendant ended abruptly when the latter ran across the room and violently rammed his head

into the wall, crying "I want to die." As indicated, this testimony, over objection, was received into evidence.

The trial court after an *in camera* hearing held that the defendant was adequately warned of his *Miranda* rights and that the statements attributed to the defendant were voluntarily made. However, the trial court did not make a specific finding as to whether the defendant waived his various constitutional rights. But for the fact that we deem the defendant's statements to be "volunteered statements," we would have to reverse this judgment and remand the matter to the trial court with directions to make a specific finding on the issue of waiver. See our recent opinion *Billings v. People,* 171 Colo. 236, 466 P.2d 474.

In *Miranda* appears the following:
"In dealing with statements obtained through interrogation, we do not purport to find all confessions inadmissible. Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today."

In our view the facts of the instant case readily distinguish it from *Miranda* to the end that *Miranda* does not dictate a reversal. This is not the situation where the defendant's statement resulted from custodial interrogation by the police. The defendant's statements were not made in response to interrogation, but on the contrary were "volunteered statements" made to one whom

the defendant had specifically asked to see. Incidentally, there is nothing in the record to indicate that Fuller was in any sense of the word acting as an agent for the police.

In further support of our disposition of this issue see *Davidson v. United States*, 371 F.2d 994 (10th Cir. 1966) where it was also stated that the protections afforded under the Fifth and Sixth Amendments to the United States Constitution were not to be applied in cases involving "volunteered confessions." Also, in this particular connection the facts of the instant case are somewhat akin to those of *Larry Washington v. People*, 158 Colo. 115, 405 P.2d 735 and *Albert James Washington v. People*, 169 Colo. 323, 455 P.2d 656. In the former case we held that the defendant's statement to a "trusted friend" was not rendered inadmissible by *Escobedo v. Illinois*, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977. And in the latter case we held that a "voluntary incriminating statement" to a friend in response to a question was not interdicted by either *Escobedo* or *Miranda*.

■ Other matters raised by counsel have been examined and found to be of no moment. No good purpose would be served by any extended comment in connection with these particular matters. It is sufficient to state that the evidence does support the verdict; that any possible error by the district attorney in closing argument was not prejudicial in nature; that there was no error in refusing to give defendant's tendered instruction No. 1; and that defendant was not denied his right to a speedy trial. In this latter connection we note that defendant was tried in just a little over three months from the date of the alleged offense.

Judgment affirmed.

MR. JUSTICE PRINGLE, MR. JUSTICE KELLEY and MR. JUSTICE GROVES concur.