THE STATE OF OHIO, APPELLEE, *v.* GALLAGHER, APPELLANT.

(No. 73-623—Decided June 26, 1974.)

292

294

Mr. Lee C. Falke, prosecuting attorney, and Mr. Randal A. Anderson, Jr., for appellee.

Mr. Jack T. Schwarz, for appellant.

WILLIAM B. BROWN, J. The question presented is whether testimony, concerning certain statements made by appellant to his parole officer about his involvement in a crime, was received at trial in violation of appellant's privilege against self-incrimination, as guaranteed by Section 10, Article I of the Ohio Constitution, and the Fifth Amendment to the United States Constitution.

The opinion of the Court of Appeals and the brief of appellee cite cases from other jurisdictions which have considered this question. Of the cases cited, three courts held the testimony of the parole officer inadmissible because the accused had not been given *Miranda* warnings at any time prior to questioning by the parole officer[4]; two courts held the testimony proper because a parole or probation officer is not a "law enforcement officer" as contemplated by *Miranda* and, therefore, the accused was not entitled to

---

[4]*State* v. *Lekas* (1968), 201 Kan. 579, 442 P. 2d 11; *State* v. *Williams* (Mo. 1972), 486 S. W. 2d 468; and *People* v. *Gastelum* (1965), 237 Cal. App. 2d 205, 46 Cal. Rptr. 743.

*Miranda* warnings[5]; in *Nettles* v. *State* (Fla. App. 1971), 248 So. 2d 259, the court held a probation officer's testimony admissible, even though the officer had failed to advise the accused of his rights, because the accused, by accepting probation, had supposedly effectuated a continuous waiver of the right to be advised of his *Miranda* rights; and in the last case cited, *Gilmore* v. *People* (1970), 171 Colo. 353, 467 P. 2d 828, the court held a probation officer's testimony admissible because the statements made to the officer had been "volunteered" within the meaning of *Miranda,* wherein (384 U. S. 436), at page 478, the United States Supreme Court stated: "Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today."

In our opinion, the foregoing cases are not persuasive when applied to the facts in this case, which may be briefly summarized as follows: Police officers advised appellant of his *Miranda* rights prior to interrogation, and when the appellant refused to make a statement he was offered promises of leniency and was confronted by an alleged accomplice who had already confessed to the crime. As a result of those tactics, appellant made a statement to the police officers which was later suppressed at trial as an *involuntary* utterance. Four days after appellant's interrogation, his parole officer asked for a statement, but appellant refused to discuss the matter. The parole officer never advised appellant of any of his *Miranda* rights, but nevertheless returned seven days later, requested a statement, and got one. At trial, the parole officer was called as a prosecution witness and related the statements made to him by appellant.

Upon those facts, we view the question presented in this appeal as whether appellant was compelled to produce evidence against himself or whether utterances to his parole officer were voluntarily given. Upon this ultimate issue of voluntariness, it is our duty to "make an independ-

[5]*State* v. *Johnson* (S. Dak. 1972), 202 N. W. 2d 132; *People* v. *Ronald W.* (1969), 24 N. Y. 2d 732, 249 N. E. 2d 882.

ent determination." *Davis* v. *North Carolina* (1966), 384 U. S. 737, 742.

*United States* v. *Deaton* (C. A. 5, 1972), 468 F. 2d 541, certiorari denied, 410 U. S. 934, squarely confronts the precise question presented by this case, at page 544:

"* * * Deaton's parole officer testified, over objection, to statements made to him by Deaton, tending to incriminate Deaton on the harboring and concealing charge, uttered in response to direct interrogation by the parole officer when Deaton was in custody, and without the officer having given Deaton the warnings required by *Miranda.* We have considerable doubt as to the propriety of even calling the parole officer as a witness for such a purpose.[6] But, pretermitting that, we have no doubt that the testimony was inadmissible unless the officer gave prior *Miranda* warnings. A parolee is under heavy psychological pressure to answer inquiries made by his parole officer, perhaps even greater than when the interrogation is by an enforcement officer.'"[7]

---

[6]The lack of propriety referred to by the *Deaton* court is more fully illustrated in *Smith* v. *Rhay* (C. A. 9, 1969), 419 F. 2d 160, 164, as follows:

"* * * Although Northrup [the parole officer] was called as a witness for the purpose of describing the investigation and arrest, his testimony revealed through necessary inference that he was already acting in the capacity of Smith's parole officer at the time of the offense. The jury obviously must have inferred that Smith had been previously convicted for unknown crimes, an inference that would place Smith's character in issue as part of the prosecution's case against him. Smith contends that this procedure violated his constitutional right to a fair trial.

"It is a rule of almost universal application that evidence of past crimes cannot be introduced as part of the prosecution's case in chief. The rule is based on both a lack of relevance to the principal case and the highly prejudicial effect that the evidence may have on a jury. * * *"

However, in this case, there was no objection made to the identification of Sykes as appellant's parole officer, and that question is not before this court.

[7]The *Deaton* court went on to affirm the conviction, because on the day preceding the statement to the parole officer, Deaton had

We agree that a parolee is under heavy pressure to cooperate with his parole officer. Here, the parole officer testified that he had the power to recommend the return to prison of a parolee under his charge, and that appellant might have assumed that his utterances were in some way confidential.

It is clear, therefore, that compulsion intervened when the parole officer sought to elicit a statement from appellant, without first making known to appellant that the privilege against self-incrimination could be relied upon.

Accordingly, we hold that testimony as to utterances made by an accused to his parole officer is inadmissible at trial where the utterances were in response to questions by the parole officer and, prior to the questioning, the parole officer failed to advise the accused of his right to remain silent, his right to be provided with counsel prior to questioning, and to warn him that any utterance may be used as evidence against him.

Therefore, the judgment of the Court of Appeals is reversed, and the cause is remanded to the Court of Common Pleas for further proceedings in accordance with law.

*Judgment reversed.*

O'NEILL, C. J., HERBERT, STERN, CELEBREZZE and P. BROWN, JJ., concur.

CORRIGAN, J., dissents.

---

made verbal statements to police officers "after having been given proper *Miranda* warnings," and subsequent to the statement to the parole officer, Deaton reduced the prior verbal statement made to police officers into a formal recorded statement. Thus, the court concludes, "the statements to the parole officer were merely cumulative of evidence from other sources." In this case, however, prior statements to police officers were properly suppressed at trial as involuntary utterances.