STATE EX REL. STRUZIK, Petitioner-Appellant, V. DEPARTMENT OF HEALTH & SOCIAL SERVICES, Respondent.

*No. 76–054. Argued March 3, 1977.—Decided April 19, 1977.*
(Also reported in 252 N. W. 2d 660.)

For the appellant there were briefs and oral argument by *Howard B. Eisenberg,* state public defender.

For the respondent the cause was argued by *James H. Petersen,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

DAY, J.   James Struzik (parolee) was convicted of armed and masked robbery on January 27, 1970 in the circuit court of Milwaukee county. He was sentenced to an indeterminate term of not more than thirteen and one-half years in the Wisconsin State Prisons. On September 9, 1974 he was paroled to the supervision of the Department of Health and Social Services (Department).

On May 27, 1975 parolee traveled to Neenah and Appleton and on his return to Milwaukee, at about 1:00 a.m., he stated that he left the highway to fix the muffler on his automobile. A police car came to the scene and a police officer found a thirty-eight caliber revolver in the front of the car. The parolee was arrested for carrying a concealed weapon. The police then made a search of the trunk of the car over the parolee's objection. They found various tools which they described as burglary tools and which the parolee described as "everyday working tools," along with a sawed-off shotgun and a twenty-two caliber revolver and a quantity of ammunition. While being held in the Milwaukee County jail, he was interviewed by his parole agent. The agent did not tell him that any statement he made could form the basis for revocation of his parole, nor was he given "Miranda rights." In a statement given to the agent the parolee admitted the possession of the weapons and ammunition but stated that he had purchased the three weapons for about fifty dollars ten days earlier from an unknown person at a bar in Milwaukee and hoped to resell them at a profit.

On June 23, 1975 a parole violation warrant was issued alleging that the parolee violated the conditions of his

parole by admitting to possession of various fire arms. On July 28, 1975 a parole revocation hearing was held by a hearing examiner for the Department in Milwaukee County jail. The parolee was represented by the State Public Defender. On July 31, 1975 the hearing examiner issued findings and a recommendation that the parolee's parole be revoked. The Department Secretary accepted the recommendation on August 14, 1975 and parole was revoked. The parolee obtained a writ of certiorari from the circuit court directed to the Department on October 21, 1975. The decision of the Department was affirmed, the writ of certiorari was dismissed and judgment was entered affirming the action of the Department.

Though not shown in the record before us, the State Public Defender in his brief states that the criminal charges against the parolee were dismissed "because the evidence was illegally obtained from the parolee."

The State Public Defender on behalf of the parolee argues that the statement given to the parole agent in the jail should have been suppressed at the revocation hearing for two reasons. First, that the parolee had a right to *Miranda* warnings and because he did not receive such warnings the statement should have been excluded at the revocation hearing. Second, that the statement was "coerced" because the parolee faced the dilemma of answering the agent's questions and facing either revocation or use of the statement at pending criminal proceedings or not answering and having his parole revoked for failure to answer.

Mr. Struzik's first argument is that given the custodial nature of the interrogation which led to his inculpatory statement, he was entitled to the warnings mandated by *Miranda v. Arizona,* 384 U.S. 436 (1966).[1] Because he

---

[1] "In *State v. Hernandez,* 61 Wis.2d 253, 257, 212 N.W.2d 118 (1973), we stated that the United States Supreme Court, in *Miranda v. Arizona,* 'held that before the police could take an incustody statement from a defendant they must inform the defend-

did not receive these warnings he contends the statement should have been excluded at the revocation hearing.

The privilege against self-incrimination, which *Miranda* warnings are primarily intended to secure,[2] provides that no person shall be compelled in *any criminal case* to be a witness against himself. U. S. Const., Amend. V. Although the United States Supreme Court has not answered the question whether parole revocation hearings are "civil proceedings" with respect to application of the fifth amendment,[3] it has declined to hold the requirements of *Miranda* necessary to render pre-trial statements admissible at other than criminal proceedings. *Baxter v. Palmigiano,* 425 U.S. 308, 315 (1976).

In *Gagnon v. Scarpelli,* however, the court observed:

". . . there are critical differences between criminal trials and probation or parole revocation hearings, and both society and the probationer or parolee have stakes in preserving these differences. . . ." 411 U.S. 778, 788, 789 (1973).

In determining that a revocation hearing does not require all the components of an adversary criminal prosecution, it was said revocation:

". . . is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocation." *Morrisey v. Brewer,* 408 U.S. 471.

---

ant that he has a right to be silent; that anything he says can be used against him in court; that he must be informed of his right to have a lawyer and to have the lawyer present if he gives a statement; that if he is indigent a lawyer will be appointed for him, and that he can discontinue the statement at any time. Further, there must be a showing that he intelligently waived these rights.' " *Micale v. State,* 76 Wis.2d 370, 251 N.W.2d 458 (1977).

[2] 384 U.S. at 444.

[3] *United States v. Janis,* 428 U.S. 433, n. 30, 49 L. Ed. 2d 1046 (1976).

This court has often reiterated this principle. *See, State ex rel. Hanson v. H&SS Dept.,* 64 Wis.2d 367, 378–379, 219 N.W.2d 267 (1974). This court has also held that conditions of probation may impinge upon constitutional rights as long as they are not overly broad and are reasonably related to a person's rehabilitation. *Edwards v. State,* 74 Wis.2d 79, 84–85, 246 N.W.2d 109 (1976) ; *State v. Tarrell,* 74 Wis.2d 647, 247 N.W.2d 696 (1976) ; *State v. Garner,* 54 Wis.2d 100, 105, 194 N.W.2d 649 (1972).

Because we conclude a revocation hearing is significantly different from an adversarial criminal proceeding, the fifth amendment's own, self-contained exclusionary rule[4] is inapplicable in the revocation context. Thus, if the exclusionary rule is to be extended, it must be a judicial extension for reasons of policy.

In *United States v. Calandra,* 414 U.S. 338 (1974) the Supreme Court stated the judicially created exclusionary rule "has never been interpreted to proscribe the use of illegally seized evidence in all proceedings or against all persons." 414 U.S. at 348. In determining not to extend the rule to grand jury proceedings, the court "weigh(ed)' the potential injury to the historic role and functions of the grand jury against the potential benefits of the rule as applied in this context." *Id.* at 349.[5]

The *Calandra* court added that:

". . . as with any remedial device, the application of the rule has been restricted to those areas where its remedial objectives are thought most efficaciously served." 414 U.S. at 348. *Accord: United States v. Janis, supra.*

---

[4] *Conrad v. State,* 63 Wis.2d 616, 636, 218 N.W.2d 252 (1974); *United States v. Janis, supra,* 428 U. S. at 443; 49 L. Ed. 2d at 1054.

[5] Because we deal with the advisability of a judicial extension of the exclusionary rule, we look to similar considerations in a fourth amendment setting.

There are two basic policy reasons for application of the exclusionary rule: first, to deter unlawful, undesirable or unconstitutional police conduct and second, to insure some integrity in the judicial process by not having the judicial process sanction, approve and be a party to constitutional violations or undesirable or unlawful police conduct. *Conrad v. State, supra,* 63 Wis.2d at 635.

Neither policy requires the application of the exclusionary rule in the revocation hearing setting. Insofar as protecting the fifth amendment privilege in later criminal proceedings is concerned, exclusion at the revocation hearing would be merely superfluous since the statement could properly be excluded at the criminal trial itself.[6]

Nor do we find any reason for deterring the parole agent from questioning his client. So long as the parolee is not forced to compromise his constitutional privilege against self-incrimination at a subsequent criminal proceeding, it is both the right of society and the duty of the agent to hold the conditionally free parolee accountable. As we said in *State v. Evans,* 77 Wis.2d 225, 252 N.W.2d 664:

"If the convicted criminal is thus to escape the more severe punishment of imprisonment for his wrongdoing, society and the potential victims of his anti-social tendencies must be protected. Supervision must be such as to most likely assure such result. The probation officer cannot maintain a personal surveillance over each proba-

[6] *Kansas v. Lekus,* 201 Kan. 579, 442 P.2d 11 (1968); *State v. Magby,* 113 Ariz., 345, 554 P.2d 1272 (1976); *State of Washington v. Roberts,* 14 Wash. App. 727, 544 P.2d 754 (1976); *Ohio v. Gallagher,* 38 Ohio St.2d 291, 313 N.E.2d 396 (1974) *cert. granted,* 420 U.S. 1003, remanded, 424 U.S. 257, *on remand,* 46 Ohio St.2d 225, 348 N.E.2d 336 (1976). The Attorney General states in his brief, "Respondent most certainly agrees that statements given to a parole agent upon the agent's inquiry should not be admissible in a criminal proceeding." *Cf., State v. Evans, supra.*

tioner placed under his charge. He must depend on reports from others, oftentimes anonymous, which the officer must check out. One of the ways is to confront the probationer with the information and discuss it with him, or to ask the probationer about his activities, associations, and whereabouts at particular times. If the probationer refuses to discuss his activities or answer specific questions, such refusal under the probation agreement may be grounds for revocation."[7]

Our holding the exclusionary rule is not, under the facts before us, applicable in a parole or probation revocation hearing is in accord with the majority of courts which have considered the question in either a fifth or fourth amendment context. In *In Re Martinez*, 1 C.3d 641, 83 Cal. Rptr. 382, 465 P.2d 734 (In Bank 1970) *cert. den.* 400 U.S. 851, the California Supreme Court wrote:

". . . the social consequences of imposing the exclusionary rule upon the authority can be disastrous. Conceivably, if the improperly obtained evidence were the sole basis for parole revocation, the authority might find itself unable to act in the case of the paroled murderer whom the police improperly discovered had cached a minor armory for future use or the paroled narcotics peddler who had collected a quantity of heroin for future sale. Although we recognize, of course, that such evidence would not be admissible in a court of law, we believe that an agency whose delicate duty is to decide when a convicted offender can be safely allowed to return to and remain in society is in a different posture than the court which decides his original guilt. To blind the authority to relevant facts in this special context is to incur a risk of danger to the public which, at least as of this date, outweighs the competing considerations of a problematical gain in deterrence. . . ." 1 C.3d at 650.

[7] There is no evidence in this case of statements made to a police officer who knows the person with whom he is talking is a probationer.

*See also, United States v. Johnson,* 455 F.2d 932 (5th Cir. 1972) ;[8] *United States v. Hill,* 447 F.2d 817 (7th Cir. 1971) ; *United States v. Deaton,* 465 F.2d 541 (5th Cir. 1972) *cert. den.* 410 U.S. 934; *United States v. Delago,* 397 F. Supp. 708 (S.D.N.Y. 1974) ; *State v. Farmer,* 512 F.2d 160 (6th Cir. 1975), *cert. den.* 423 U.S. 987, *People v. Dowery,* 62 Ill.2d 200, 340 N.E.2d 529 (1975).

Mr. Struzik further contends that his statement was coerced by virtue of the fact that if he had not given the statement, he would have been revoked for not informing his agent of his whereabouts.[9] We agree that to some extent Mr. Struzik's obligations to his parole agent are coercively enforced. We do not find this a violation of due process, however, so long as the probationer has no constitutionally protected interest in *not* talking. As noted earlier in this opinion, the conclusion Mr. Struzik's statements could not be used against him in a criminal trial does not lead to the second conclusion that such statements should also be excluded at the revocation hearing.[10]

We believe a parolee's responsibility to answer his agent's questions or face possible revocation if he does not is a price society has a right to exact for the privilege of conditional liberty.

*By the Court.*—Judgment affirmed.

---

[8] Stating, "(a)n injection of the *Miranda* protection here could be toxic and produce a paresis in the probation process."

[9] No allegation is made of physical abuse or other "third-degree" tactics.

[10] Additionally, in *State v. Evans,* mandated this date, we have declared as a rule of evidence in criminal proceedings that, "upon timely objection, the testimony of a probationer or a parolee given in response to questions by a probation or parole agent or at a probation or parole revocation hearing, which questions are prompted by pending charges or accusations of particular criminal activity, or any evidence derived from such testimony, is inadmissible against the probationer or parolee during subsequent proceedings on related criminal charges" except for limited purposes of impeachment or rebuttal.