THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GARY L. DIESING, Defendant-Appellant.

Second District   No. 77-376

Opinion filed December 29, 1978.

Mary Robinson and Mark Heyrman, both of State Appellate Defender's Office, of Elgin, for appellant.

Daniel Doyle, State's Attorney, of Rockford (Phyllis J. Perko and Jan Tuckerman, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

The defendant, Gary L. Diesing, pled guilty to possession of less than 200 grams of amobarbitol in violation of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1977, ch. 56½, par. 1402(b)) and as a first offender was, without conviction, placed on 18 months probation pursuant to section 410 of the act (Ill. Rev. Stat. 1977, ch. 56½, par. 1410). During that period he violated his probation and following a hearing he was convicted of the original offense and sentenced to 2 years' probation on condition that he serve 60 days in a work release center. As the result of a statement made to his work release supervisor in the county jail admitting to a probation violation, and after a petition to revoke probation and a hearing, defendant's probation was revoked and he was

sentenced to a term of 1 year and 4 months to 4 years' imprisonment. He appeals.

In issue is whether the inculpatory statement of defendant to the work release supervisor that he had smoked a marijuana cigarette was the result of custodial interrogation and in violation of the rule of *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966); if so, whether the statement was admissible against defendant in a probation revocation proceeding, and whether the physical evidence obtained as a result of the statement was admissible.

Officer Frederick, the work release supervisor, testified that on August 20, 1976, the defendant left the work release center at the Winnebago County Jail to seek employment, returned at about 12:30 p.m., which was a half-hour late and was called into Frederick's office. Frederick further testified that:

"When Mr. Diesing came in my office, he wasn't acting normal like he usually does every day when he returned. His eyes were bloodshot, he was sleepy and drousy [*sic*]. I asked him what was the matter, if he was ill and his answer was no. I checked—asked him if he had been drinking, no; and I checked his breath, asked him to blow in my face to see if I could detect any alcohol on his breath and I couldn't. And he said well, I am not going to lie to you, Mr. Frederick, I was out this morning and I smoked a marijuana cigarette. I then informed Gary that he was in violation of our rules and I would have to put him upstairs and we told him—I told him we would strip search him. So my room is private, the doors are closed, my office, and he—I had another officer come in and we searched Gary. He took off his clothes, we searched his garments and when he dropped his trousers, he had three handrolled cigarettes taped to his body by scotch tape. He released them and handed them to me and I said, is there any pot in there, Gary, and he said yes. And I sealed, identified the cigarettes, sealed them up and turned them over to the narcotics division."

An envelope referred to by Officer Frederick containing three handrolled cigarettes was admitted into evidence without objection. There was also proof that, on testing, the cigarettes contained cannabis.

■■ We first conclude that the rule of *Miranda* applies. The defendant was in custody at the time of the questioning in the sense that he was not free to leave Frederick's office (*cf. People v. Burris,* 49 Ill. 2d 98, 102-03 (1971)); and the questioning focused on the defendant (see *Miranda v. Arizona,* 384 U.S. 436, 467-68, 478, 16 L. Ed. 2d 694, 719-20, 726, 86 S. Ct. 1602, 1624, 1630 (1966)). Further, since the admission was made after several questions probing the defendant's "strange" appearance, we do

not consider his statements spontaneous or volunteered. (*Cf. People v. Hicks*, 44 Ill. 2d 550, 553 (1970).) The rule of *Miranda* has been held to apply to interrogation by a parole officer (*United States v. Deaton*, 468 F. 2d 541, 544 (5th Cir. 1972)), and to the questioning of a probationer by his probation officer (*State v. Magby*, 113 Ariz. 345, 554 P.2d 1272, 1276 (1976)). The rationale of these cases is that both parolees and probationers are under heavy psychological pressure to answer inquiries made by their supervising officers. We agree with the reasoning and hold that it is equally applicable to one in the position of the defendant who is the inmate of a work release center.

The question is whether defendant's statement, which the record shows to be voluntary except for the technical *Miranda* violation, must be excluded in a probation revocation proceeding.

In *People v. Dowery*, 62 Ill. 2d 200, 206 (1975), the Illinois Supreme Court held that, in general, evidence suppressed in the trial of a substantive criminal offense because of an illegal search and seizure violative of the Fourth Amendment of the United States Constitution is admissible in a probation revocation proceeding. The *Dowery* opinion does not reach the issue of whether statements obtained in violation of the Fifth Amendment privilege against self-incrimination are admissible in a probation revocation hearing. It should be noted that in the case before us the defendant does not argue that the marijuana that was removed from his person should be suppressed because obtained in violation of the Fourth Amendment; rather, he argues that it should be suppressed because it was the tainted fruit of a statement obtained from him in violation of the Fifth Amendment.

In *People v. Peterson* (consolidated with In re McMillan), 74 Ill. 2d 478, the Illinois Supreme Court has most recently ruled that the involuntary confession of an accused probation violator together with the fruits of the confession are inadmissible in proceedings to revoke probation. The clear import of the ruling in *Peterson*, which distinguishes between results under the Fifth Amendment from those under the Fourth Amendment, is that if the confession is found to have been voluntary, both the confession and its fruits are admissible in the probation revocation hearing. See *People v. Peterson*, 74 Ill. 2d 478, 488 (1978). See also this court's dicta in *People v. Peterson*, 50 Ill. App. 3d 853, 856 (1977).

A majority of opinions in other jurisdictions which have directly ruled on the admissibility of confessions which although voluntary are in technical violation of *Miranda*, have held such confessions admissible in parole revocation and probation revocation hearings. See, *e.g.*, *In re Martinez*, 1 Cal. 3d 641, 463 P.2d 734, 83 Cal. Rptr. 382 (1970); *United*

*States v. Johnson,* 455 F.2d 932, 933 (5th Cir. 1972); *Commonwealth v. Kates,* 452 Pa. 102, 305 A.2d 701, 711 (1973); *United States v. Delago,* 397 F. Supp. 708, 712 (S.D. N.Y. 1974).

■■ We therefore conclude that it was not error for the trial court to admit the defendant's voluntary confession in evidence in the probation revocation hearing even though the technical requirements of *Miranda* were not met. Inasmuch as the primary evidence was admissible it follows that the physical evidence seized from defendant's person as a result of his admission was also properly admitted in the absence of any Fourth Amendment objection to the admission of that evidence. The judgment of the trial court is affirmed.

Affirmed.

WOODWARD and GUILD, JJ., concur.