STATE of Minnesota, Plaintiff,

v.

Marshall Donald MURPHY, Defendant.

No. 82–271.

Supreme Court of Minnesota.

Aug. 31, 1982.

Warren Spannaus, Atty. Gen., St. Paul, Thomas L. Johnson, County Atty., and Robert H. Lynn, Asst. County Atty., Minneapolis, for plaintiff.

Mark S. Wernick, Minneapolis, for defendant.

SCOTT, Justice.

Pursuant to Minn.R.Crim.P. 29.02, subd. 4 (1980), the district court has certified to this court as important and doubtful the question of the admissibility of a confession made by defendant, who is being prosecuted on a charge of first-degree murder, to his probation agent. The issues raised by the appeal relate to whether the confession was obtained in violation of defendant's privilege against compelled self-incrimination, which is contained in U.S.Const. amend. V.

In 1974 defendant was twice questioned by Minneapolis Police in connection with the murder of a 17-year-old Minneapolis girl but no charges were filed against him.

In 1980 defendant pleaded guilty to a reduced charge of false imprisonment in a prosecution for criminal sexual conduct in the second degree in connection with a different incident. The trial court sentenced defendant to a stayed prison term of 16 months, with 3 years probation. As conditions of probation, defendant was ordered to participate in a treatment program and to report to his probation agent as directed by her. He was also ordered to be truthful with her in all matters.

Thereafter, defendant met with the agent at her office approximately once a month.

In July 1981 the agent received information that defendant was no longer participating in the treatment program. The agent wrote defendant a letter telling him to contact her and set up a meeting. The letter added that "Failure to do so will result in an immediate request for a warrant." That meeting was held in late July, with the agent telling defendant at the end that notwithstanding his lack of participation in the program, she was not going to seek revocation of his probation because he was employed and was doing well in other areas.

Defendant next met with the agent on September 11, 1981, without incident. He was next scheduled to arrange a meeting with the agent in mid-October.

On September 22, the agent learned from a counselor at the treatment program that during treatment defendant had said that he had once committed a rape/murder and that the police did not arrest him because of the lack of evidence.

Two days later the agent met with her supervisor and they decided that she had to report this information to the police. She told her supervisor that she would tell defendant of their decision. That same day she wrote defendant a letter stating, in full, "To further discuss a treatment plan for the remainder of your probation, I am requesting that you contact me upon your receipt of this letter to set an appointment." The agent did not contact police before meeting with defendant but knew in advance that she would tell the police about any incriminating statements defendant made.

The meeting was held on the morning of September 28 in the agent's office. The agent apparently opened the meeting by telling defendant about the information which she had received from the counselor and then said that she now felt that defendant needed treatment. Defendant became angry when he learned this. He stated that he felt his confidences had been breached by the disclosure and that he felt like calling an attorney.

The agent apparently replied that he would have to deal with that outside the office; that her main concern was to talk to him about the relationship of the prior crime and the one of which he was convicted and about his need for treatment under the circumstances.

The agent testified that her door was unlocked and that defendant was perfectly free to leave at any time without talking with her. Defendant testified that he did not feel free to leave because that would have been a violation of his probation. He also testified that he did not know he had a right to refuse to answer her questions or to consult an attorney, and that, because she put the entire conversation in the context of what the treatment plan for him should be, it did not occur to him that she would go to the police with what he said. He testified further that he had had two probation officers before her and that neither of them had ever gone to the police with anything he said.

The session therefore continued, with the agent first talking with defendant about the crime of which he was convicted, then about the rape/murder. When defendant claimed that he really was not guilty of the crime of which he was convicted, the agent confronted him with the police reports and so on and challenged his claim of innocence. When she talked with him about the rape/murder, he confessed.

After defendant had made his confession, the agent informed him for the first time that she would have to tell the police what he had said. She also urged defendant to turn himself in.

On September 30, after talking with an attorney, defendant told the agent that he had been advised not to turn himself in to the police. On October 2, a warrant was issued for defendant's arrest. He was subsequently indicted for first-degree murder with testimony given by the agent. The district court denied a motion to suppress.

The issue before us is whether the confession to the agent was obtained in violation of any of defendant's rights. We hold that it was.

The United States Constitution, Amendment V, protects one against being "compelled in any criminal case to be a witness against himself."

Generally, the government may not use a person's incriminating statements in any subsequent criminal case in which he is a defendant if the statements were legally compelled by the government notwithstanding his claim of the privilege against compelled self-incrimination. *Garner v. United States,* 424 U.S. 648, 653, 96 S.Ct. 1178, 1181, 47 L.Ed.2d 370 (1976).

■ Although the privilege is not self-executing but generally must be claimed, the United States Supreme Court has isolated certain situations in which the failure to claim the privilege at the time of the compulsion will not bar the defendant's later reliance on it at trial.

One such situation is custodial interrogation of a suspect. In *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Court held that not even a voluntary confession obtained during custodial interrogation of a suspect by police could be used against him in a later criminal prosecution unless the prosecution showed that the suspect was given a *Miranda* warning and knowingly and intelligently waived the privilege. The reason for the exception in such cases was stated in *Garner v. United States,* 424 U.S. 648, 657, 96 S.Ct. 1178, 1184, 47 L.Ed.2d 370 (1976), as follows:

It is presumed that without proper safeguards the circumstances of custodial interrogation deny an individual the ability freely to choose to remain silent. [Citation omitted]. At the same time, the inquiring government is acutely aware of the potentially incriminatory nature of the disclosures sought. Thus, any pressures inherent in custodial interrogation are compulsions to incriminate, not merely compulsions to make unprivileged disclosures. Because of the danger that custodial interrogation posed to the adversary system favored by the privilege, the Court in *Miranda* was impelled to adopt the extraordinary safeguard of excluding statements made without a knowing and intelligent waiver of the privilege.

In another line of cases the Court held that persons required to file returns in connection with the federal occupational and excise taxes on gambling could exercise the privilege simply by failing to file such a return and did not have to submit a claim of privilege in lieu of the return in order to claim the privilege because such a submission by itself would have been incriminating. *Marchetti v. United States,* 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968); *Grosso v. United States,* 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968). As stated in *Garner,* "The basis for the holdings in *Marchetti* and *Grosso* was that the occupational and excise taxes on gambling required disclosures only of gamblers, the great majority of whom were likely to incriminate themselves by responding" and therefore, as in the case of custodial interrogation of suspects, "Any compulsion to disclose was likely to compel self-incrimination." 424 U.S. at 660, 96 S.Ct. at 1185.

A third situation in which the Court has held that the defendant can rely on the privilege at trial notwithstanding his failure to claim it at the time he made his incriminating statements is exemplified by *Garrity v. New Jersey,* 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967). In that case policemen who were being investigated for corruption were told that they could

claim the privilege but that they would be discharged if they did. The Court held that their incriminating disclosures could not later be used against them notwithstanding their failure to claim the privilege when they were being investigated because the penalty of discharge for the concededly valid exercise of the privilege foreclosed a free choice to remain silent.

Finally, in *Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), the Court held that it was error to allow a psychiatrist to testify at the penalty phase of a capital felony trial on the issue of future dangerousness because the psychiatrist's opinion was based on incriminating statements that defendant had made during a court-ordered psychiatric examination to determine defendant's competency for trial, at which defendant had not been given a *Miranda* warning. Although the psychiatrist was not a policeman, he was not acting solely in defendant's interests when he examined defendant and the examination was in fact a phase of the adversary system. Since the defendant did not initiate the evaluation or attempt to use the psychiatric evidence, the defendant should not have been compelled to submit to the examination without a warning to him that his statements could be used against him.

A majority of courts in other jurisdictions which have considered the admissibility of confessions made by a released offender to a probation or parole officer while in custody and absent *Miranda* warnings have held such confessions admissible in parole or probation revocation hearings, but inadmissible in a criminal prosecution.[1] This rule was more succinctly stated by the United States District Court for the Western District of Pennsylvania as follows:

[W]hile statements made to a probation or parole officer without the *Miranda* warnings being given are properly admitted in a parole revocation hearing where various types of hearsay may be used to inform the court as to the parole violation, nevertheless when these statements are used to prove an entirely separate offense against the defendant and he is in custody and under the compulsion of discussing matters with his parole or probation officer, *Miranda* warnings must be given before such testimony can be admitted in evidence in the trial involving the separate offense.

*United States v. Steele,* 419 F.Supp. 1385, 1386–87 (W.D.Pa.1976). A rationale underlying the suppression of statements given a parole officer without *Miranda* warnings is that released offenders are under heavy psychological pressure to answer inquiries made by their supervising officers. This pressure is recognized as sufficient to render the interrogation inherently coercive.[2]

These cases, *inter alia,* illustrate the exceptions to the rule that a person ordinarily must claim the privilege at the time he is being compelled to incriminate himself if he later wants to be able to prevent the use of the incriminating statements in any criminal prosecution of him. Justice Powell summarized the rule recently in *Roberts v. United States,* 445 U.S. 552, 559, 100 S.Ct. 1358, 1364, 63 L.Ed.2d 622 (1980), stating that "[a]t least when the Government has no substantial reason to believe that the requested disclosures are likely to be incriminating, the privilege may not be relied upon unless it is invoked in a timely fashion." He then summarized *Garner* by saying, in a footnote, that the rule is subject to

1. *See People v. Diesing,* 67 Ill.App.3d 109, 23 Ill.Dec. 781, 384 N.E.2d 575, 577 (1978); *State ex rel. Struzik v. Dept. of Health & Soc. Serv.,* 77 Wis.2d 216, 252 N.W.2d 660, 662 (1977); *People v. Hardenbrook,* 68 Mich.App. 640, 243 N.W.2d 705, 708 (1976); *State v. Magby,* 113 Ariz. 345, 554 P.2d 1272, 1276 (1976); *State v. Roberts,* 14 Wash.App. 727, 544 P.2d 754, 756–57 (1976); *United States v. Deaton,* 468 F.2d 541, 544 (5th Cir. 1972); *State v. Williams,* 486 S.W.2d 468, 473 (Mo.1972); *State v. Lekas,* 201

Kan. 579, 442 P.2d 11, 15 (1968). *See also United States v. Rea,* 678 F.2d 382 (2d Cir. 1982); *State v. Earnest,* 293 N.W.2d 365 (Minn. 1980).

2. *See, e.g., State v. Gallagher,* 38 Ohio St.2d 291, 313 N.E.2d 396, 400 (1974), *cert. granted,* 420 U.S. 1003, 95 S.Ct. 1445, 43 L.Ed.2d 761, *remanded,* 425 U.S. 257, 96 S.Ct. 1438, 47 L.Ed.2d 722, *on remand,* 46 Ohio St.2d 225, 348 N.E.2d 336 (1976).

exception "when some coercive factor prevents an individual from claiming the privilege or impairs his choice to remain silent." 445 U.S. at 560, n.6, 100 S.Ct. at 1364, n.6.

We need not decide whether defendant in fact claimed the privilege in this case because we conclude that an exception must be made on the facts of this case to the general rule requiring a timely claim of the privilege.

Although defendant was not in custody in the usual sense, his freedom of action was considerably restricted at the time of the questioning. In *Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), the psychiatric examination occurred in jail so that the questioning was custodial in the usual sense. However, some of the language used by Chief Justice Burger in the Court's opinion suggests that the result might have been the same even if the examination had not been conducted while the defendant was in jail because defendant was under legal compulsion, in the form of a court order, to submit to the examination.

In this case the examination occurred in the agent's office. Defendant was there at her request but, unlike the defendant in *Oregon v. Mathiason,* 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977), who voluntarily went to the station to talk with the police at their request, defendant was there under legal compulsion since it had been made clear to him in the past that it was a condition of his probation that he meet with the agent when requested. It was also a condition of defendant's probation that he respond truthfully to the agent's questions. Failure to meet with her or to be truthful with her could have constituted a violation of the terms of probation.

Also, the questioning was not just general questioning but questioning by a government agent who had "substantial reason to believe that the requested disclosures [were] likely to be incriminating," *Roberts v. United States,* 445 U.S. 552, 559, 100 S.Ct. 1358, 1364, 63 L.Ed.2d 622 (1980), a fact bearing strongly on whether defendant's failure at that time to claim the privilege bars his reliance on the privilege as a ground for suppression at trial.

 Because of the compulsory nature of the meeting, because defendant was under court order to respond truthfully to his agent's questions, and because the agent had substantial reason to believe that defendant's answers were likely to be incriminating, we conclude that, as a matter of federal constitutional law, any failure on defendant's part to claim the privilege when he was questioned does not bar his later reliance on the privilege in seeking suppression of his confession. Stated differently, we conclude that, as a matter of due process, the agent should have warned defendant of his privilege against compelled self-incrimination before she questioned him and that her failure to do so, when she had already decided to report his answers to the police, bars use of defendant's confession at this trial.

When the enormity of this decision is contemplated, we wonder whether there may be some other solution than the exclusion of otherwise trustworthy evidence. John Henry Wigmore Professor of Law Emeritus Fred E. Inbau, in his article *Over-Reaction—The Mischief of Miranda v. Arizona,* 73 J.Crim.L. & C. 797 (1982), writes that:

> There is no better refutation of *Miranda* philosophy than the opinion of Chief Justice Joseph Weintraub of the New Jersey Supreme Court in a 1968 case, in which he stated:

> "There is no right to escape detection. There is no right to commit a perfect crime or to an equal opportunity to that end. The Constitution is not at all offended when a guilty man stubs his toe. On the contrary, it is decent to hope that he will. Nor is it dirty business to use evidence a defendant himself may furnish in the detectional stage. Voluntary confessions accord with high moral values, and as to the culprit who reveals his guilt unwittingly with no intent to shed his inner burden, it is no more unfair to use the evidence he thereby reveals than it is to turn against him clues at the scene of the crime which a brighter, better in-

formed, or more gifted criminal would not have left. Thus the Fifth Amendment does not say that a man shall not be permitted to incriminate himself, or that he shall not be persuaded to do so. It says no more than that a man shall not be 'compelled' to give evidence against himself."

*Id.* at 809. At this writing, however, we believe that *Weeks v. United States,* 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), and its progeny constitutionally demand the result arrived at in this opinion.

Reversed and remanded for further proceedings.

PETERSON, Justice (dissenting).

The essence of the majority decision is that the interrogation of the defendant/probationer by his probation officer, who failed to inform him of his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), violated due process and mandates suppression of the resulting confession. The most recent case to consider this issue supports a contrary conclusion. In *United States v. Rea,* 678 F.2d 382 (2d Cir. 1982), a probation officer received information concerning possible violations of probation by a probationer. The officer went to the probationer's home and questioned the probationer about the alleged violations. The probationer, after unsuccessfully requesting an attorney, gave incriminating responses. The probationer later sought to suppress these responses, contending that the interrogation was custodial and thus the admission of the statements violated *Miranda.* The court characterized this contention as "without merit" and stated:

> The duty "to report" and to answer questions posed by a probation officer is an integral obligation of the probationary status. While a probationer is not deprived completely of his Fifth Amendment rights and may assert them, he runs the risk that his refusal to answer will lead to a charge of violation of probation. Any other rule would make a mockery of the supervision aspect of probation.

*Id.* at 390. While *Rea* is not foursquare with the facts in this case, I see little difference between imprisoning a defendant for violation of parole and imprisoning him for a new crime, based in either case on evidence obtained from his probation officer. There was no more coercion of defendant Murphy in this case than there was of the defendant in *Rea,* and hence, I cannot see that defendant Murphy was "compelled" to give evidence against himself. In this regard, I concur with the views of Chief Justice Weintraub contained in the last paragraph of the majority opinion.

YETKA, Justice (dissenting).

I respectfully dissent. I do not believe the privilege against self-incrimination was intended to apply to the situation presented here. The defendant is a parolee who would be serving a prison sentence but for that fact. One of the conditions of his parole is to meet periodically with a probation agent. The probation officer's function is to work towards rehabilitating the parolee while protecting the public interest. *State v. Earnest,* 293 N.W.2d 365 (Minn. 1980). To do this job, the agent must be aware of all of the parolee's problems, both past and present. It is entirely reasonable for the agent to ask a parolee if he has had prior problems with the law. If the agent in this case had gone first to the police before talking with the defendant, she would have destroyed her credibility and severely impaired her ability to assist the defendant.

We have held in *State v. Earnest,* 293 N.W.2d 365 (Minn.1980), that a parolee has a duty to cooperate with his agent and that an agent can search a parolee's apartment without a search warrant if the agent has probable cause to believe the parolee has violated the terms of parole. As we noted there, because of the special relationship between a probation officer and his client, the law relating to probationary searches cannot be strictly governed by automatic reference to ordinary search and seizure rules. *Id.* at 368; *see Latta v. Fitzharris,* 521 F.2d 246, 251 (9th Cir.), *cert. denied,* 423 U.S. 897, 96 S.Ct. 200, 46 L.Ed.2d 130 (1975)

(parole rather than probation situation). Thus, I would hold this is not an ordinary custodial situation to which the privilege should apply. Even if it is held to be custodial, I would hold that this parolee's situation is an exception to the rule and that the privilege does not apply.