GERALD LAWRENCE MARRS *v.* STATE OF MARYLAND

[No. 185, September Term, 1982.]

*Decided December 7, 1982.*

The cause was argued before MORTON, MOYLAN and MOORE, JJ.

*David P. Sutton, Assigned Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Ann E. Singleton, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Paul S. Podolak, State's Attorney for Cecil County,* and *James C. McKinney, Assistant State's Attorney for Cecil County,* on the brief, for appellee.

MORTON, J., delivered the opinion of the Court.

Appellant, Gerald Lawrence Marrs, convicted by a jury in the Circuit Court for Cecil County of arson under Md. Ann. Code art. 27, § 7, and sentenced to seventeen years imprisonment with the last five years suspended, presents in this appeal a question of first impression in this State — whether a statement or confession resulting from a parole officer's questioning, although aimed solely at the parole function, may be admitted in a criminal prosecution where not preceded by *Miranda* warnings.[1]

Appellant, taken into custody by two Cecil County police officers on trespassing charges, was questioned by his probation officer in the presence of the two officers in the police vehicle on the way to the police station and upon arrival at the police station about an arson that had occurred approximately one year earlier. The probation officer, tes-

---

1. Miranda v. Arizona, 384 U.S. 436 (1966).

tifying that the purpose of his questioning was to enable him to make a proper recommendation as to whether appellant's bail bond and probation should be revoked, at no time gave appellant *Miranda* warnings.

While appellant denied any involvement in the arson when he was questioned the first two times in the presence of the police officers, he told his probation officer, after first requesting the police officers to leave, that he had "set the fire." This statement, admitted into evidence after appellant's motion to suppress was denied, forms the basis of the instant conviction.

The privilege against self-incrimination, which *Miranda* warnings are primarily intended to secure, mandates that no person shall be compelled in any criminal case to be a witness against himself. U. S. Const., amend. V. In order to be subject to *Miranda* warnings, a defendant's statement must flow from "custodial interrogation" within the meaning of *Miranda,* there defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. at 444.

The State, conceding that appellant was in custody and that no *Miranda* warnings were given, argues that the *Miranda* safeguards are not applicable to questioning conducted by a probation officer.

While statements made to a probation officer without the *Miranda* warnings being given are uniformly held properly admitted in a probation or parole revocation hearing,[2] there

---

2. For some cases which have held that the protections afforded by Miranda and the exclusionary rule have not been extended to administrative probation or parole revocation hearings, *see* Hughes v. Gwinn, 290 S.E.2d 5 (W.Va. 1981); State v. Joao, 606 P.2d 1332 (Hawaii 1980); State v. Lassai, 366 So.2d 1389 (La. 1978); State v. Rivera, 569 P.2d 1347 (Ariz. 1977); State v. Evans, 252 N.W.2d 664 (Wis. 1977); Creeks v. State, 542 S.W.2d 849 (Tex. 1976); People v. Hardenbrook, 243 N.W.2d 705 (Mich. 1976); State v. Johnson, 514 P.2d 1073 (Wash. 1973); Commonwealth v. Kates, 305 A.2d 701 (Pa. 1973). *See also* Gagnon v. Scarpelli, 411 U.S. 778 (1973); United States v. Johnson, 455 F.2d 932 (5th Cir. 1972), *cert. denied,* 409 U. S. 856 (1972); United States v. Delago, 397 F. Supp. 708 (S.D.N.Y. 1974); 77 A.L.R. 3d 669.

seems to be a difference of opinion as to whether those same statements may be admitted in a subsequent criminal prosecution. The overwhelming weight of authority, however, stands in favor of exclusion.

Just as custodial interrogation is not limited to police station-house interrogation, *see Mathis v. United States,* 391 U.S. 1 (1968), *Orozco v. Texas,* 394 U.S. 324 (1969), neither is the protection of the fifth amendment limited to any single source of official interrogation. Where a defendant is subject to the inherently compelling pressures of a custodial situation, in order to intelligently exercise his fifth amendment rights, he "must receive certain warnings before *any official interrogation"* (emphasis supplied), *Estelle v. Smith,* 451 U.S. 454, 467 (1981), whether the official interrogator be a prison guard, *Whitfield v. State,* 287 Md. 124 (1980), *cert. dismissed,* 446 U.S. 993 (1980), an agent of the Internal Revenue Service, *Mathis v. United States, supra,* a court designated psychiatrist, *Estelle v. Smith, supra,* or a prosecuting attorney, *People v. Arnold,* 426 P.2d 515 (Cal. 1967).

The rationale underlying the suppression of statements given a law enforcement officer or any other "official interrogator" without proper safeguards is that the circumstances of custodial interrogation may compel an accused to make incriminating disclosures. It seems to us that an accused, whose essential obligation it is to "report to" and "answer questions posed by a probation officer," *United States v. Rea,* 678 F.2d 382 (2d Cir. 1982), is under even heavier psychological pressure to answer questions put by his probation officer, a figure of both authority and trust. A probationer, who often talks to his supervising officer as a counselor and confidante, might very well assume that any statements made by him are in some way confidential thus bringing into play the mandates of *Miranda.* A majority of courts in other jurisdictions which have considered the question so holds. *See State v. Murphy,* 324 N.W.2d 340 (Minn. 1982); *People v. Diesing,* 384 N.E.2d 575 (Ill. 1978); *State v. Magby,* 554 P.2d 1272 (Ariz. 1976); *State v. Davis,* 337 A.2d 33 (N.J. 1975), *cert. denied, New Jersey v. Pace,* 425 U.S. 943

(1976); *State v. Gallagher,* 313 N.E.2d 396 (Ohio 1974), *vacated,* 425 U.S. 257 (1976), *on remand,* 348 N.E.2d 336 (1976); *State v. Williams,* 486 S.W.2d 468 (Mo. 1972); *State v. Lekas,* 442 P.2d 11 (Kan. 1968); *People v. Gastelum,* 46 Cal. Rptr. 743 (Cal. 1965). *See also United States v. Rea,* 678 F.2d 382 (2d Cir. 1982); *United States v. Deaton,* 468 F.2d 541 (5th Cir. 1972), *cert. denied,* 410 U.S. 934 (1973), and later app. *United States v. Deaton,* 477 F.2d 65 (1973), *cert. denied, Deaton v. United States,* 414 U.S. 840 (1973); *United States v. Steele,* 419 F. Supp. 1385 (W.D.Pa. 1976). *Contra see State v. Johnson,* 202 N.W.2d 132 (S.D. 1972); *People v. Ronald W.,* 249 N.E.2d 882 (N.Y. 1969); *Gilmore v. People,* 467 P.2d 828 (Colo. 1970); *Nettles v. State,* 248 So. 2d 259 (Fla. 1971). *But see Croteau v. State,* 19 Cr. Law Rptr. 2316 (Fla. 1976).

As the Fifth Circuit Court of Appeals observed when faced with the question of the admissibility of incriminating statements made by a parolee in direct response to questioning by his parole officer while in custody and without the benefit of *Miranda* warnings:

"We have considerable doubt as to the propriety of even calling the parole officer as a witness for such a purpose.[3] But, pretermitting that, we have no doubt that the testimony was inadmissible unless the officer gave prior *Miranda* warnings. A parolee is under heavy psychological pressure to answer inquiries made by his parole officer, perhaps even greater than when the interrogation is by an enforcement officer." *United States v. Deaton,* 468 F.2d at 544. Quoted with approval in *United States v. Steele,* 419 F. Supp. at 1387; *State v. Gallagher,* 313 N.E.2d at 399-400.

---

**3.** The lack of propriety alluded to by the Deaton court is the revelation to the jury that the parole or probation officer was acting in such a capacity at the time of the offense being tried and, inferentially, that the accused had been convicted previously, thus placing highly prejudicial and possibly irrelevant evidence before the jury. *See* State v. Gallagher, 313 N.E.2d at 399, n. 6.

The South Dakota court, concluding to the contrary in *State v. Johnson,* 202 N.W.2d 132 (1972), that a parole officer was not a "law enforcement officer" subject to the *Miranda* dictates, distinguished the limited authority of South Dakota parole officers from the statutorily broader police powers of parole and probation officers in other jurisdictions, concluding that questioning by such officers constituted custodial interrogation. We do not think it is a meaningful distinction. Nor do we find terribly acute the analysis of *Nettles v. State,* 248 So. 2d 259 (Fla. 1971), wherein the Florida court concluded that the defendant, by accepting probation, waived his right to any *Miranda* warnings from his probation officer.

We conclude that appellant was indeed interrogated in the *Miranda* sense and that the probation officer, as "official interrogator," was a law enforcement officer within the meaning of *Miranda.*

That the probation officer merely intended, by his questioning, to elicit information from which parole and bail bond recommendations might be made is immaterial. As the Court of Appeals enunciated in *Whitfield v. State,* 287 Md. 124, 143 (1980):

> "[W]e do not believe that the subjective intent, albeit the primary objective, of the examiner should control the determination of when interrogation within the meaning of *Miranda* has occurred. The Supreme Court has rejected a similar argument to that made here by the State in *Mathis v. United States, supra.* Consequently, it seems to us, in the words of Professor Kamisar
>
>> that so long as the police conduct is likely to elicit incriminating statements and thus endanger the privilege, it is police 'interrogation' *regardless of its primary purpose or motivation,* and that if it otherwise qualifies as 'interrogation,' *it does not become something else* because the interrogator's main purpose is [something other] than the procuring of

incriminating statements, even though self-incrimination may be foreseen as a windfall. [Kamisar, *Brewer v. Williams, Massiah, and Miranda: What is 'Interrogation'? When does it Matter?*, 67 Geo. L.J. 1, 9 (1978) (footnote omitted) (emphasis in original).]"

Asking appellant where he was on the night of the fire and whether he had anything to do with the fire was, assuming appellant's guilt, likely to elicit an incriminating response. No *Miranda* warnings having been given, appellant's statement to his probation officer was not admissible at trial.

We need not, because of our disposition of the first issue, address appellant's second contention that the court's instructions on reasonable doubt were insufficient.

> *Judgment reversed; case remanded for a new trial; costs to be paid by Cecil County.*