PEOPLE v FAULKNER

Docket No. 78-1847. Submitted April 5, 1979, at Lansing.—Decided
    June 5, 1979. Leave to appeal applied for.

Defendant, Danny Faulkner, was convicted of larceny and being
    an habitual criminal—fourth offense in Ingham Circuit Court,
    James T. Kallman, J. Prior to trial, defendant attempted to
    have excluded from evidence responses he made to questions
    posed by the director of the "halfway house" where defendant
    was a resident. The trial court allowed the statements into
    evidence. Defendant appeals. *Held:*

    The statements should have been excluded because defendant
    was not given *Miranda* warnings prior to the director's ques-
    tioning.

    Reversed.

CRIMINAL LAW — EVIDENCE — MIRANDA WARNINGS — HALFWAY
    HOUSE RESIDENTS.

    Statements made by a resident of a "halfway house" to the
    director of the house concerning a crime and in response to the
    director's questions are not admissible in a prosecution of the
    resident for the crime where the resident was not given *Mi-
    randa* warnings prior to the questioning.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *Peter D. Houk,*
Prosecuting Attorney, *Michael G. Woodworth,*
Chief Appellate Attorney, and *Kathaleen Rae
Price,* Assistant Prosecuting Attorney, for the peo-
ple.

*Kulick, Smith, Kistler & Colbert,* for defendant
on appeal.

REFERENCES FOR POINTS IN HEADNOTE
29 Am Jur 2d, Evidence §§ 555, 557.
Necessity of informing suspect of rights under privilege against self-
    incrimination, prior to police interrogation. 10 ALR3d 1054-1063.

Before: R. M. MAHER, P.J., and M. J. KELLY and D. F. WALSH, JJ.

D. F. WALSH, J. Defendant, Danny Faulkner, was convicted by a jury of larceny of property having a value over $100, MCL 750.356; MSA 28.588. He was also found guilty of being an habitual offender —fourth offense, and was sentenced to a prison term of 7 to 30 years. The sole issue raised on appeal concerns the admissibility of a statement made by defendant. Defendant was not given his *Miranda* advice before the questioning began which gave rise to his statement. *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).[1]

On the day of the alleged offense defendant was a resident at the New Way In in Lansing, Michigan. New Way In is a "halfway house" where certain prisoners from Jackson Prison are allowed to live prior to release on parole. Residents at New Way In are still considered inmates of Jackson Prison. MCL 791.265a(1)(b); MSA 28.2325(1)(1)(b). See 1978 AACS R 791.4401(3)(f), 791.4410, 791.4420, 791.4425.

Prior to trial, defendant moved to exclude from evidence a statement made by him on the day of the alleged offense to Wendell Rodgers, director of residency of New Way In. It was defendant's contention that the statement was inadmissible since he had not been advised of his rights before Mr. Rodgers questioned him about the incident. The trial court denied the motion:

"First of all, we have to point out one distinction, this

[1] That the investigation had "focused" on defendant has never been disputed. The "focus" element of the *Miranda* rule as interpreted by Michigan courts is, therefore, not at issue. See *People v Brannan,* 406 Mich 104; 276 NW2d 14 (1979).

gentleman was not under arrest and not in custody because of an arrest, he was on inmate status halfway in or halfway out of Jackson, depending on how you want to phrase it, knowing full well he had certain rules and regulations he must comply with. You might even say that frankly he's better off in a halfway house then he is in Jackson, it would seem to me he'd want to abide by those particular rules and regulations. Anyway, Meranda *[sic]* obviously deals with a custodial situation plus law enforcement officers. * * *

"At this particular point, and that is the police to police officers, I think we must use some, frankly, common sense in the application of this law and as I read the law in Michigan it does not apply to this type of situation and would not apply to an individual like Wendell Rogers *[sic]*."

We disagree with the trial court's ruling and reverse defendant's conviction.

Residents of New Way In are required to sign out with Mr. Rodgers whenever they leave the facility. They must also sign in with him upon return. At the time of his statement to Mr. Rodgers, defendant was signing in after returning from a morning of work with the Visiting Nurses Association. At the hearing on the motion to suppress, defendant testified that, if he had disobeyed the sign in/out rules, he would have been returned to Jackson. He testified that, on the day in question, Mr. Rodgers told him to remain in Rodgers' office when he came to sign in after work. According to defendant, disobedience of Rodgers' demand would have resulted in his return to prison.

At trial, Rodgers testified that he had received a phone call informing him that some items, including two rings, were missing from the home where defendant had worked on the morning of the day in question. When defendant arrived, Rodgers,

without advising him of his rights, questioned him about the incident. Defendant responded that he knew nothing about it. Rodgers told defendant to empty his pockets. They were empty. During the next 15-20 minutes defendant repeatedly told Rodgers, in response to the latter's questions, that he knew nothing about the incident. Rodgers then took defendant downstairs so that defendant's possessions could be searched. Rodgers described this as "normal procedure for our operation". When the men reached defendant's locker, Rodgers again asked defendant if he knew anything about the incident. Defendant responded that he did. Rodgers then told defendant to accompany him to his office. Defendant told Rodgers that he had found a box containing two rings while emptying one trash container into another at the home that morning. Defendant told him that he had thrown the rings "around the corner" on his way home. Rodgers told defendant to show him where he had thrown the rings. They returned downstairs because defendant wanted to get something from his locker. While downstairs, defendant knelt down, reached under his bed, and produced two rings. They were later identified as those missing from the home where defendant had worked.

The issue is whether, in order to justify admission of defendant's statement at trial, Rodgers was required to preface his questioning with the *Miranda* warnings. The prosecution argues that defendant was not in custody but was free to move around. Nor, argues the prosecutor, was defendant questioned by the police. Defendant counters by noting that he was an inmate of Jackson Prison and not a free individual at the time of the statement. *Miranda* applies, according to defendant, even though Rodgers is not a police officer.

The Supreme Court partly summarized its *Miranda* holding as follows:

"To summarize, we hold that when an individual is *taken into custody* or *otherwise deprived of his freedom* by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized." (Emphasis added.) 384 US 478.

In *Mathis v United States,* 391 US 1; 88 S Ct 1503; 20 L Ed 2d 381 (1968), the Supreme Court held that the reason a person is in custody does not affect the requirement that *Miranda* warnings be given. Also see *State v LaRue,* 19 Wash App 841; 578 P2d 66 (1978), where the Washington court noted that a prisoner is always in custody. It is the fact that the person being questioned is not free to go elsewhere that calls for application of *Miranda.* 19 Wash App 841, 846; 578 P2d 66, 69. And in *People v Diesing,* 67 Ill App 3d 109; 384 NE2d 575 (1978), it was concluded that an inmate of a work release center, when questioned by the center's supervisor, was entitled to the *Miranda* warnings. Citing and analogizing to cases involving interrogation by parole and probation officers, the Illinois court noted that "both parolees and probationers are under heavy psychological pressure to answer inquiries made by their supervising officers". 67 Ill App 3d 109, 111; 384 NE2d 575, 577. See, *e.g., United States v Deaton,* 468 F2d 541 (CA 5, 1972), also cited in *People v Hardenbrook,* 68 Mich App 640, 645-646; 243 NW2d 705 (1976). In *Diesing,* the defendant was found to have been in custody in that he was not free to leave his supervisor's office and the questioning had focused on him. 67 Ill App 3d 109, 110-111; 384 NE2d 575, 576-577.

While Rodgers was not technically a police officer, he, as director of the New Way In, had sub-

stantial control over the movement of the residents. The record strongly suggests that the interrogation of defendant by Rodgers was, for all relevant purposes, indistinguishable from a police interrogation. Defendant was not free to refuse to answer Rodgers' questions, to disobey his orders or to refuse to submit to his searches.

We do not disagree with the holdings in *People v Omell,* 15 Mich App 154; 166 NW2d 279 (1968), and *People v Leroy Morgan,* 24 Mich App 660; 180 NW2d 842 (1970). Those cases are significantly distinguishable from the instant case. In *People v Omell, supra,* this Court held that a private investigator is not required to warn someone of his constitutional rights prior to taking a statement from him. The Court noted that "other jurisdictions have uniformly held that a person not a police officer, *or not acting in concert with or at the request of police authority",* need not warn of constitutional rights before eliciting a statement. (Emphasis added.) 15 Mich App 154, 156-157. The Court in *People v Leroy Morgan, supra,* found no practical difference, for purposes of determining the applicability of *Miranda,* between a private security officer and the private investigator involved in *Omell.*

In contrast to the two foregoing cases, the instant facts strongly suggest significant authority on the part of Mr. Rodgers to restrict defendant's freedom to move about and to suppress absolutely any inclination defendant may have had to decline to submit to his interrogation. As director of a facility designated by the Department of Corrections as a residence for prisoners classified to community status, Rodgers is considered an "authorized representative of the director" of the department. R 791.4425(3). As such, he certainly

acts "in concert with or at the request of police authority". *People v Omell, supra,* 157.

Defendant's conviction is reversed for the reason that his statement was improperly admitted into evidence.