PEOPLE v ELLIOTT

Docket No. 301645. Submitted January 12, 2012, at Lansing. Decided
   March 8, 2012, at 9:05 a.m. Leave to appeal granted, 491 Mich 938.
   Samuel Lee Elliott was convicted by a jury in the Jackson Circuit
   Court of armed robbery, MCL 750.529. A man had entered a gas
   station, told the attendant he had a gun, and demanded the store's
   money. Elliott was arrested the following day on the basis of his
   brother's identification and was interrogated after he was in-
   formed of his rights pursuant to *Miranda v Arizona*, 384 US 436
   (1966). The police interrogation ended after he invoked his right to
   counsel. Three days later, while still in jail, Elliott confessed to a
   parole officer when questioned about the robbery in conjunction
   with being served with parole-violation charges. The parole officer
   did not advise Elliott of his *Miranda* rights beforehand. Defense
   counsel moved to suppress the confession, which the court, Tho-
   mas D. Wilson, J., denied, concluding that the parole officer had
   not acted as a law enforcement official when questioning Elliott.
   Following his conviction and sentencing, Elliott appealed.

      The Court of Appeals *held*:

      1. The right against self-incrimination is guaranteed by both
   the United States and the Michigan Constitutions, US Const, Am
   V; Const 1963, art 1, § 17, and the protection against compelled
   self-incrimination is construed the same for the Michigan Consti-
   tution as its federal counterpart. When a criminal defendant is
   subject to a custodial interrogation, before any questioning the
   defendant must be advised of the rights set forth in *Miranda*,
   which include the right to the presence of an attorney. Questioning
   initiated by law enforcement officers after a person has been taken
   into custody or otherwise deprived of his or her freedom of action
   in any significant way constitutes a custodial interrogation. A
   defendant is in custody if a reasonable person in the defendant's
   situation would believe that he or she was not free to leave and if
   the relevant environment was inherently coercive. Statements an
   accused made during a custodial interrogation are inadmissible
   unless the accused knowingly, voluntarily, and intelligently waived
   his or her rights.

2. Elliott invoked his Fifth Amendment right to counsel when he requested an attorney while being interrogated by the police, and law enforcement officials were not constitutionally permitted to initiate further custodial interrogation outside the presence of his counsel. The parole officer's discussion with Elliott in the jail's library three days later regarding parole-violation charges constituted custodial interrogation because a reasonable person in Elliott's situation would not believe he or she was free to leave and the environment was inherently coercive. The parole officer's questioning constituted interrogation because her questions were reasonably likely to elicit an incriminating response from Elliott.

3. Constitutional protections apply only to governmental action. *Miranda* protections apply not only to custodial interrogation by law enforcement officials, but also to those by persons acting in concert with or at the request of the police. The trial court did not clearly err when it concluded that the parole officer did not act in concert with or at the request of the police. While the parole officer reviewed the police report before interviewing Elliott, there was no evidence that the interview was at the request of the police or in collaboration with their investigation.

4. When a defendant is not informed of his or her *Miranda* rights, statements elicited by a law enforcement official during a custodial interrogation are not admissible because of the inherently compelling pressures that undermine the individual's will to resist and to compel the defendant to speak. Parolees and probationers are under heavy psychological pressure to answer the questions of their supervising officers when they would not otherwise do so freely. The parolee-parole officer relationship is adversarial because the parole officer is an agent of the state, whose questions must be answered to avoid parole revocation. Moreover, a parole officer is more likely to elicit incriminating statements from a parolee with whom he or she has formed a relationship than a police interrogator would be. When a parole officer subjects a parolee to a custodial interrogation, there is always the possibility that the questioning will lead to a criminal prosecution. Thus, a parole officer is a law enforcement official for purposes of *Miranda*. Statements made by a parolee to a parole officer during a custodial interrogation are inadmissible in a subsequent trial if the parolee invoked his or her right to counsel before questioning began. The trial court erred by denying Elliott's motion to suppress his confession because he had invoked his right to counsel during an earlier police interrogation and he was still in custody when he was interviewed by and confessed to his parole officer.

5. The trial court's failure to suppress Elliott's statements to his parole officer was not harmless error beyond a reasonable doubt because there was a reasonable possibility that those statements might have contributed to his conviction.

Reversed and remanded for a new trial.

1. CONSTITUTIONAL LAW — SELF-INCRIMINATION — CUSTODIAL INTERROGATION — *MIRANDA* WARNINGS.

When a criminal defendant is subject to a custodial interrogation, before any questioning he or she must be advised of the rights set forth in *Miranda v Arizona*, 384 US 436 (1966), which includes the right to the presence of an attorney; questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his or her freedom of action in any significant way constitutes a custodial interrogation; a defendant is in custody if a reasonable person in the defendant's situation would believe that he or she was not free to leave and if the relevant environment was inherently coercive; statements an accused made during a custodial interrogation are inadmissible unless the accused knowingly, voluntarily, and intelligently waived his or her rights (US Const, Am V; Const 1963, art 1, § 17).

2. CONSTITUTIONAL LAW — SELF-INCRIMINATION — *MIRANDA* WARNINGS — GOVERNMENTAL ACTION.

The protections of *Miranda v Arizona*, 384 US 436 (1966), apply not only to custodial interrogations by law enforcement officials, but also to those by persons acting in concert with or at the request of the police (US Const, Am V; Const 1963, art 1, § 17).

3. CONSTITUTIONAL LAW — SELF-INCRIMINATION — *MIRANDA* WARNINGS — CUSTODIAL INTERROGATION — PAROLE OFFICERS.

A parole officer is a law enforcement official for purposes of the safeguards set forth in *Miranda v Arizona*, 384 US 436 (1966); statements made by a parolee to a parole officer during a custodial interrogation are inadmissible in a subsequent trial if the parolee invoked his or her right to counsel before questioning began (US Const, Am V; Const 1963, art 1, § 17).

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *Henry C. Zavislak*, Prosecuting Attorney, and *Jerrold Schrotenboer*, Chief Appellate Attorney, for the people.

*Patrick K. Ehlmann* for defendant.

Before: BECKERING, P.J., and OWENS and SHAPIRO, JJ.

BECKERING, P.J. Defendant, Samuel Lee Elliott, appeals as of right his conviction by a jury of armed robbery, MCL 750.529. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 15 to 30 years' imprisonment.

The police arrested defendant for violating his parole after receiving information that he had committed a robbery. The police advised defendant of his *Miranda*[1] rights and interrogated him. Defendant ultimately invoked his right to counsel, and the interrogation ended. Three days later, a parole officer served defendant with parole-violation charges while defendant was still in jail. The parole officer did not advise defendant of his *Miranda* rights before asking him for his statement regarding the robbery charge. Defendant told the parole officer that he had committed the robbery. Defendant's confession to the parole officer was admitted during his trial, after which he was convicted of the charged offense. At issue in this case is whether the trial court erred when it denied defendant's motion to suppress his statements to the parole officer and, if so, whether the error was harmless. We reverse and remand for a new trial.

## I. FACTS AND PROCEDURAL HISTORY

On June 16, 2010, a man entered an Admiral gas station at about 3:15 a.m. and asked the cashier for a pack of Marlboro Reds cigarettes. The man then told the cashier that he had a gun and that the cashier needed to give him the money from the register. The man wore a University of Michigan fleece pullover

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

and a University of Michigan hat. The cashier noticed what appeared to be a handgun protruding from the waistband of the man's shorts. The cashier gave the man the pack of cigarettes and $157 from the register, including a marked $2 bill. The man then left the gas station.

The next day, defendant's brother contacted the police and told them that defendant had robbed the gas station. The police arrested defendant later that day for violating his parole and took him to the Jackson County Jail. The police then searched the residence where defendant was staying and obtained a hat and fleece pullover purportedly belonging to defendant that matched those worn by the robber. On June 18, 2010, detectives went to the jail, advised defendant of his *Miranda* rights, and interrogated him about the robbery. Defendant answered several questions, stated that he did not rob the gas station, and then invoked his right to an attorney, at which point the interrogation ended.

On June 21, 2010, Cheryl Evans, a parole officer, went to the jail to "serve [defendant] parole violation charges and get his statement" regarding the robbery. Before meeting with defendant, Evans received the police report and spoke with Detective Ed Smith about the fact that defendant was a suspect for the armed robbery of the gas station. A deputy escorted defendant from his jail cell to the jail library, where Evans interviewed him. Evans did not read defendant his *Miranda* rights. Evans served defendant with his parole-violation charges relating to the robbery and asked defendant for his statement regarding the robbery. According to Evans, defendant told her that he had robbed the gas station. After the interview, Evans called Smith and informed him that defendant had confessed to the

robbery. On June 24, 2010, defendant was arraigned on the charge of armed robbery.

On the first day of trial, but before jury selection, defendant moved to suppress the statements that he had made to Evans on June 21, 2010. Defense counsel stated that "the main issue" with respect to the motion was whether a parole officer constitutes a law enforcement officer for Fifth Amendment purposes. Defense counsel argued as follows, in pertinent part:

My argument, Judge, is that un-Mirandized statements obtained by Cheryl Evans, a parole agent, in the jail is an inherently coercive custodial condition, which is envisioned by *Miranda*. And that's the type of situation where . . . in order for the statements to come in as evidence . . . you need to have advised the suspect of his *Miranda* warnings and his right to counsel and everything that comes along with it.

\* \* \*

. . . I believe that Cheryl Evans was acting as an agent of the government. There's a special relationship between her and Sam Elliott and, to make it even worse, it was in the jail. He was under arrest; he'd been there since the seventeenth.

\* \* \*

Now, I know that the police advised him of his rights back on the eighteenth in this case, three days before. But he invoked his rights then and I don't think you can keep coming back. . . . Once you invoke your rights, questioning must stop. It did here, but then [Evans] came back, and I don't think you can come back again and start re-questioning where there has been an invocation of your constitutional right to counsel.

The prosecutor emphasized that under this Court's decision in *People v Littlejohn*, unpublished opinion

per curiam of the Court of Appeals, issued September 11, 1998 (Docket No. 195286), a parole officer is not a law enforcement officer for purposes of *Miranda*. The prosecutor argued that defendant's statements to Evans were admissible because Evans was not working in concert with the police, but was interviewing defendant as a parole officer. Smith then testified about the nature of his conversation with Evans before she interviewed defendant: "The gist of our conversation was [Evans] asked . . . whether or not there was anything she could not bring up during her conversation with [defendant] and I told her no, that he had invoked his rights and I would not be speaking with him again." Smith testified that this was the only conversation he had with Evans about the case before Evans interviewed defendant. Smith further testified that he was not aware of any other officers talking to Evans about the case or asking Evans to try and obtain information from defendant.

The trial court stated that the *Miranda* issue before it was "very unclear from the precedent that's out there." "There's a patchwork of law out there. There's nothing definitive on this position." The trial court then analyzed the motion to suppress under *Littlejohn* and concluded that defendant's statements to Evans were admissible:

> Looking at *People v Littlejohn*, Number 195286, although it's not a . . . published case, it does state that:

> "The parole officer testified she was not a police officer or a certified law enforcement officer . . . . Said she was acting independently from the police and that her only reason for speaking to the defendant was to advise him of the parole violation charges, to advise him of his rights for a preliminary hearing on those charges, and to determine if

he would agree to waive the hearing. Under these circumstances, we conclude that the parole officer was not a law enforcement official."

And that's really the main question: is a parole officer acting in this capacity, not in concert with the law enforcement -- a law enforcement official.

\*    \*    \*

Based on the guidance from *People v Littlejohn* and the circumstances outlined within that case, the Court's going to find that the parole officer was not acting in concert and the testimony I've heard here and the stipulated facts was not acting in concert with the police. She was there to advise [defendant] of the charges. The information she obtained previously was to understand what was going on so that she could advise [defendant] of the parole violation charges. And, under these circumstances, she was not . . . a law enforcement official and, therefore, the confession will come in. The statements made . . . to her will come in.

Evans testified at trial that defendant confessed to committing the robbery. Following his conviction, the trial court sentenced defendant as a fourth-offense habitual offender to 15 to 30 years' imprisonment.[2] Defendant now appeals as of right.

### II. SUPPRESSION OF STATEMENTS TO PAROLE OFFICER

Defendant argues that the trial court erred when it denied his motion to suppress his statements to Evans because as a parole officer, Evans was a law enforcement officer for purposes of *Miranda* who subjected him to a custodial interrogation after he had invoked his right to counsel three days earlier. We agree.

---

[2] The trial court later entered an amended judgment of sentence, indicating that defendant's sentence was to run consecutively to his preexisting sentences related to the parole violations.

## A. STANDARD OF REVIEW

When we review a trial court's factual findings with respect to a motion to suppress, we defer to the trial court unless the court's findings are clearly erroneous. *People v Herndon*, 246 Mich App 371, 395; 633 NW2d 376 (2001). A finding is clearly erroneous if this Court is "left with a definite and firm conviction that a mistake has been made." *People v Muro*, 197 Mich App 745, 747; 496 NW2d 401 (1993). We review de novo a trial court's ultimate decision on a motion to suppress. *People v Lapworth*, 273 Mich App 424, 426; 730 NW2d 258 (2006).

## B. *MIRANDA* AND CUSTODIAL INTERROGATION

The right against self-incrimination is guaranteed by both the United States and the Michigan Constitutions. US Const, Am V; Const 1963, art 1, § 17. "[T]he protection against compelled self-incrimination in the Michigan Constitution [is] construed the same as its federal counterpart." *People v Bender*, 452 Mich 594, 637; 551 NW2d 71 (1996) (BOYLE, J., dissenting). In *Miranda v Arizona*, 384 US 436, 444; 86 S Ct 1602; 16 L Ed 2d 694 (1966), the United States Supreme Court established "procedural safeguards . . . to secure the privilege against self-incrimination." Under *Miranda*, when a criminal defendant is subjected to a custodial interrogation, the defendant must be warned before any questioning that he or she has "a right to remain silent, that any statement [the defendant] does make may be used as evidence against him [or her], and that [the defendant] has a right to the presence of an attorney, either retained or appointed." *Id*. A "custodial interrogation" is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any

significant way." *Id.* When determining whether a defendant was "in custody," courts consider both whether a reasonable person in the defendant's situation would believe that he or she was free to leave and "whether the relevant environment present[ed] the same inherently coercive pressures as the type of station house questioning at issue in *Miranda.*" *Howes v Fields*, 565 US ___; 132 S Ct 1181, 1189-1190; 182 L Ed 2d 17 (2012). "Interrogation refers to express questioning and to any words or actions on the part of police that the police should know are reasonably likely to elicit an incriminating response from the subject." *People v Raper*, 222 Mich App 475, 479; 563 NW2d 709 (1997). Statements of an accused made during a custodial interrogation are inadmissible unless the accused knowingly, voluntarily, and intelligently waived his or her Fifth Amendment rights. *People v Tierney*, 266 Mich App 687, 707; 703 NW2d 204 (2005); see also *Miranda*, 384 US at 444-445.

"[T]he Fifth Amendment right to counsel is a corollary to the amendment's stated right against self-incrimination and to due process." *People v Marsack*, 231 Mich App 364, 372-373; 586 NW2d 234 (1998). "The right to counsel found in the Fifth Amendment is designed to counteract the inherently compelling pressures of custodial interrogation . . . and to secure a person's privilege against self-incrimination by allowing a suspect to elect to converse with the police only through counsel." *People v Williams*, 244 Mich App 533, 539; 624 NW2d 575 (2001) (citations and quotation marks omitted). "In *Edwards v Arizona*, 451 US 477, 484; 101 S Ct 1880; 68 L Ed 2d 378 (1981), the United States Supreme Court established the bright-line rule that an accused, having expressed a desire to deal with the police only through counsel, may not be subject to further interrogation by the authorities until counsel

has been made available unless the accused initiates further communication." *People v McRae*, 469 Mich 704, 715; 678 NW2d 425 (2004); see also *Marsack*, 231 Mich App at 374 ("The procedural safeguards for the Fifth Amendment adopted in *Miranda* . . . require that the police discontinue the questioning of a suspect when a request for counsel is made."); *Miranda*, 384 US at 444-445 ("If . . . [the defendant] indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning.").

In this case, it is not disputed that defendant's June 18, 2010, police interrogation constituted a custodial interrogation under *Miranda*. While defendant was under arrest, detectives questioned him about the robbery for which he was a suspect. See *Miranda*, 384 US at 444. Thus, defendant had a Fifth Amendment right to have counsel present during this interrogation. *Id*. at 444-445; see also *Tierney*, 266 Mich App at 710 ("A criminal defendant has a constitutional right to counsel during interrogation."). It is not disputed that defendant requested an attorney during this interrogation. By requesting an attorney, defendant invoked his Fifth Amendment right to counsel. See *Fare v Michael C*, 442 US 707, 719; 99 S Ct 2560; 61 L Ed 2d 197 (1979) ("[T]he Court fashioned in *Miranda* the rigid rule that an accused's request for an attorney is *per se* an invocation of his Fifth Amendment rights, requiring that all interrogation cease."). Defendant having invoked his right to counsel, law enforcement officers were not constitutionally permitted to initiate further custodial interrogation outside the presence of counsel. *Miranda*, 384 US at 444-445; *McRae*, 469 Mich at 715.

On June 21, 2010, Evans went to the jail to serve defendant with parole-violation charges, question de-

fendant about the robbery, and obtain defendant's "statement." By this time, defendant had been in jail for three days. A deputy escorted defendant from his jail cell to the jail's library for the meeting. During the questioning, Evans obtained incriminating statements from defendant. Evans never advised defendant of his *Miranda* rights, his attorney was not present during the meeting, and the record does not indicate that an attorney had even been made available to defendant. Given these facts, a reasonable person in defendant's situation would have believed that he or she was not free to leave, and the environment presented "the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*." *Howes*, 565 US at ___; 132 S Ct at 1189-1190. Like the defendants in *Miranda*, defendant was suspected of committing a crime, arrested, and questioned while he was in jail—an environment unfamiliar to defendant—several days after his arrest about the crime for which he was arrested. See *Miranda*, 384 US at 456-457, 491-497. Thus, defendant was in custody at the time of his meeting with Evans.[3] See *Howes*, 565 US at ___; 132 S Ct at 1189-1190. Furthermore, Evans's express questioning of defendant about the robbery in an attempt to obtain defendant's statement

---

[3] We note that the present case is distinguishable from *Howes* because the defendant in that case was questioned by authorities while he was serving a jail sentence, i.e., while he was living in jail. *Howes*, 565 US at ___; 132 S Ct at 1185, 1193. Moreover, the defendant was questioned about a crime unrelated to his incarceration. *Id.* at ___; 132 S Ct at 1185. In contrast, the authorities did not question defendant in the present case while he was serving a jail sentence; rather, defendant was questioned shortly after he was arrested, and the questioning focused on the reason for his arrest. Thus, unlike the defendant in *Howes*, defendant in this case was not questioned in "familiar surroundings" but was "cut off from his normal life and companions" by an arrest and "abruptly transported" to a "police-dominated atmosphere" for questioning. *Id.* at ___; 132 S Ct at 1190-1191. The "inherently compelling pressures" that were lacking in *Howes* were present here. *Id.* at ___; 132 S Ct at 1191.

constituted an interrogation because her questions were reasonably likely to elicit an incriminating response from defendant. See *Raper*, 222 Mich App at 479.

Therefore, Evans subjected defendant to a custodial interrogation. And, to the extent that Evans was a law enforcement officer under *Miranda*, her questioning of defendant violated defendant's Fifth Amendment rights. See *Edwards*, 451 US at 485 ("We . . . emphasize that it is inconsistent with *Miranda* and its progeny for the authorities, at their instance, to reinterrogate an accused in custody if he has clearly asserted his right to counsel.").

### C. *MIRANDA*'S APPLICATION TO PAROLE OFFICERS

"[C]onstitutional protections apply only to governmental action." See *People v Anderson*, 209 Mich App 527, 533; 531 NW2d 780 (1995). While the *Miranda* Court opined that *Miranda*'s constitutional safeguards apply whenever a law enforcement officer initiates a custodial interrogation, *Miranda*, 384 US at 444, the Court's subsequent decisions illustrate that *Miranda* is not limited to custodial interrogation performed by law enforcement officers who are police officers. See, e.g., *Estelle v Smith*, 451 US 454, 468-469; 101 S Ct 1866; 68 L Ed 2d 359 (1981) (holding that *Miranda* applies to psychiatrist during court-ordered psychiatric inquiry); *Mathis v United States*, 391 US 1, 4; 88 S Ct 1503; 20 L Ed 2d 381 (1968) (holding that *Miranda* applies to internal revenue agents conducting tax investigations). Moreover, this Court has held that *Miranda* safeguards apply to a person who is "acting in concert with or at the request of the police." *Anderson*, 209 Mich App at 533; see also *People v Grevious*, 119 Mich App 403, 407; 327 NW2d 72 (1982) ("It is also clear that [*Miranda*] warnings may be required even though the interrogator

is not technically a police officer but rather someone acting with or at the request of police authority.").

The trial court in the present case concluded that defendant's statements to Evans were admissible for two reasons: (1) Evans was not acting in concert with or at the request of the police and (2) a parole officer, such as Evans, is not a law enforcement officer for *Miranda* purposes.

We conclude that the trial court did not clearly err when it determined that Evans did not act in concert with or at the request of the police. See *Herndon*, 246 Mich App at 395. Evans testified that her purpose for interviewing defendant was to serve defendant with his parole-violation charges and obtain his statement regarding the robbery. Evans also testified that she received the police report of the robbery and spoke to a detective about the robbery before conducting her interview. Smith testified that he spoke to Evans before she interviewed defendant, and the record does not indicate that any other police officer spoke with Evans about the case before she interviewed defendant. Nothing in the record indicates that Evans interviewed defendant at the request of the police or in collaboration with their investigation. Thus, we are not left with a "definite and firm conviction" that the trial court erred by finding that Evans did not act in concert with or at the request of the police. See *Muro*, 197 Mich App at 747.

However, notwithstanding the trial court's finding that Evans was not acting in concert with or at the request of the police, the question remains whether Evans was a law enforcement officer under *Miranda* as a matter of law given her status as a parole officer and therefore precluded from interrogating defendant after he invoked his right to counsel.

In *Minnesota v Murphy*, 465 US 420; 104 S Ct 1136; 79 L Ed 2d 409 (1984), the United States Supreme Court addressed the admissibility under the Fifth Amendment of statements made to a probation officer. The defendant in *Murphy* had arranged a meeting with his probation officer at the officer's office. *Id.* at 423. During the meeting, the defendant made incriminating statements to the probation officer, who then secured an arrest and detention order for the defendant. *Id.* at 424. The Supreme Court held that the defendant's incriminating statements to the probation officer were admissible even though the probation officer did not comply with *Miranda*. *Id.* at 430-433. The Court explicitly based its holding on the fact that the defendant was not in custody when the probation officer questioned him because "there was no formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Id.* at 430 (quotation marks and citations omitted). According to the Court, the probation interview was "arranged by appointment at a mutually convenient time" and did not take place in "an unfamiliar atmosphere" or "an interrogation environment." *Id.* at 433. Furthermore, the defendant "was not physically restrained and could have left the" interview at any time. *Id.* Importantly, however, the Court noted that its constitutional inquiry would have been different had the defendant been in custody at the time of the interview:

> We emphasize that [the defendant] was not under arrest and that he was free to leave at the end of the meeting. *A different question would be presented if he had been interviewed by his probation officer while being held in police custody or by the police themselves in a custodial setting.* [*Id.* at 429 n 5 (emphasis added).]

The case now before this Court presents the exact different question to which the *Murphy* Court alluded.

The Michigan Supreme Court has not addressed the application of *Miranda* to parole officers. However, this Court has specifically addressed the issue, albeit through unpublished opinions. See *People v Stokes*, unpublished opinion per curiam of the Court of Appeals, issued July 17, 2007 (Docket No. 269345); *Littlejohn*, unpub op at 1-2.

In *Littlejohn*, the trial court admitted into evidence statements that the defendant made to a parole officer who did not advise the defendant of his *Miranda* rights before an interview. *Littlejohn*, unpub op at 1-2. On appeal, this Court affirmed the trial court's admission of the statements for two reasons. *Id.* at 2. First, the *Littlejohn* Court concluded that the parole officer did not subject the defendant to an interrogation because the defendant's statements were "volunteered" and "not the result of questioning or of behavior calculated to elicit an incriminating response." *Id.* Second, the Court concluded that the parole officer "was not a law enforcement official" and "was acting independently from the police" solely "to advise [the defendant] of parole violation charges, to advise him of his right to a preliminary hearing on those charges, and to determine if he would agree to waive the hearing." *Id.*

Similarly, in *Stokes* this Court upheld the admission of statements that a defendant made to a parole officer who did not advise the defendant of his *Miranda* rights before an interview. *Stokes*, unpub op at 4-5. Relying on our previous decision in *Anderson*, 209 Mich App at 533, the *Stokes* Court emphasized that " '[a] person who is not a police officer and is not acting in concert with or at the request of the police is not required to give *Miranda* warnings before eliciting a statement.' " *Id.* at 4, quoting *Anderson*, 209 Mich App at 533. The *Stokes* Court concluded that the "defendant's parole

officer was not a police officer conducting a custodial interrogation." *Stokes*, unpub op at 4. Furthermore, the Court opined that the parole officer had acted independently from the police and spoke to the defendant solely to advise him of parole-violation charges and his right to a preliminary hearing and to determine whether the defendant would waive the hearing. *Id.* at 4-5.

We note, however, that while this Court's decisions in *Littlejohn* and *Stokes* are persuasive authority for our constitutional inquiry, they are not precedentially binding on this Court under the rule of stare decisis. MCR 7.215(C)(1); see also *People v Green*, 260 Mich App 710, 720 n 5; 680 NW2d 477 (2004). Moreover, we recognize that while decisions of the federal circuit courts of appeals are also not precedentially binding on this Court, see *People v Oliver*, 170 Mich App 38, 47-49; 427 NW2d 898 (1988), our decisions in *Littlejohn* and *Stokes* conflict with various federal circuits that have addressed the application of *Miranda* to parole and probation officers. See, e.g., *United States v Newton*, 369 F3d 659, 663-664, 679-680 (CA 2, 2004) (applying *Miranda* safeguards to questions of a parole officer to a defendant); *United States v Andaverde*, 64 F3d 1305, 1310-1311 (CA 9, 1995) (holding that custodial statements made to probation officers are subject to the same *Miranda* analysis as statements made to law enforcement officers); *United States v Bland*, 908 F2d 471, 473-474 (CA 9, 1990) (ordering a new trial for a defendant because a parole officer's *Miranda* warning was inadequate); *United States v Deaton*, 468 F2d 541, 544 (CA 5, 1972) (stating that a parole officer must give *Miranda* warnings during a custodial interrogation of a parolee).

In *Deaton*, for example, the defendant's parole officer testified at the defendant's trial about incriminating

statements made to him by the defendant in response to "direct interrogation by the parole officer when [the defendant] was in custody" and "without the officer having given [the defendant] the warnings required by *Miranda*." *Deaton*, 468 F2d at 544. The United States Court of Appeals for the Fifth Circuit held that the defendant's statements to his parole officer were inadmissible at trial as the parole officer had not advised the defendant of his *Miranda* rights. *Id.* As a basis for its holding, the *Deaton* court explained that "[a] parolee is under heavy psychological pressure to answer inquiries made by his parole officer, perhaps even greater than when the interrogation is by an enforcement officer." *Id.*

In addition to these federal circuits, there is persuasive authority from various state appellate courts holding that *Miranda* applies to parole and probation officers. See, e.g., *State v Willis*, 64 Wash App 634, 639-640; 825 P2d 357 (1992) (community corrections officers); *State v Sargent*, 111 Wash 2d 641, 652-653; 762 P2d 1127 (1988) (probation officers); *State v Roberts*, 32 Ohio St 3d 225, 231; 513 NE2d 720 (1987) (probation officers); *Marrs v State*, 53 Md App 230, 235; 452 A2d 992 (1982) (probation officers); *State v Magby*, 113 Ariz 345, 348-349; 554 P2d 1272 (1976) (probation officers); *State v Gallagher*, 38 Ohio St 2d 291, 296-297; 313 NE2d 396 (1974), vacated on other grounds 425 US 257 (1976), reinstated on remand 46 Ohio St 2d 225 (1976) (parole officers); *State v Williams*, 486 SW2d 468, 473-474 (Mo, 1972) (parole officers); *State v Lekas*, 201 Kan 579, 584-588; 442 P2d 11 (1968) (parole officers).

In *Marrs*, police officers arrested the defendant on trespassing charges. *Marrs*, 53 Md App at 231-232. In the presence of two police officers, the defendant's

probation officer questioned the defendant in a police vehicle and also at the police station regarding an arson that had occurred about one year earlier. *Id.* According to the probation officer, he questioned the defendant so that he could "make a proper recommendation as to whether [the defendant's] bail bond and probation should be revoked" and "at no time gave [the defendant] *Miranda* warnings." *Id.* at 232. The defendant initially denied involvement in the arson, but after requesting that the police officers leave, he admitted to his probation officer that he was involved in the arson. *Id.* The defendant's statement to the probation officer was admitted into evidence at his trial for arson, and the defendant was convicted. *Id.* The Maryland Court of Special Appeals held that the defendant's statement to his probation officer was not admissible at trial because the defendant had not been advised of his *Miranda* rights. *Id.* at 235. The court opined that the probation officer's motivation for questioning the defendant was immaterial as long as the probation officer's conduct was likely to elicit an incriminating statement. According to the court, if questioning constituted an interrogation under *Miranda*, the questioning " '*does not become something else* because the interrogator's main purpose is [something other] than the procuring of incriminating statements, even though self-incrimination may be foreseen as a windfall.' " *Id.* at 235-236 (citation omitted). The court focused on the relationship between probation officers and probationers when determining that *Miranda* safeguards applied:

> It seems to us that an accused, whose essential obligation it is to "report to" and "answer questions posed by a probation officer," *United States v. Rea,* 678 F.2d 382 (2nd Cir.1982), is under even heavier psychological pressure to answer questions put by his probation officer, a figure of

both authority and trust. A probationer, who often talks to his supervising officer as a counselor and confidante, might very well assume that any statements made by him are in some way confidential thus bringing into play the mandates of *Miranda*. [*Id.* at 233.]

In *Roberts*, the Ohio Supreme Court similarly considered the relationship between probation officers and probationers before holding that a probation officer must give *Miranda* warnings before questioning an in-custody probationer. See *Roberts*, 32 Ohio St 3d at 231. After discussing the reasoning of the *Marrs* court, the *Roberts* court emphasized that there is a "deceptive effect engendered by the in-custody questioning of a probationer by his probation officer." *Id.* at 230. In explaining the potential for abuse in the probationer-probation officer relationship, the court quoted Justice Thurgood Marshall's dissent in *Murphy. Id.* Justice Marshall opined:

It is true, as the majority points out, that the discussion between a probation officer and a probationer is likely to be less coercive and intimidating than a discussion between a police officer and a suspect in custody. *Ante*, at 1144, 1145 [*Murphy*, 465 US at 433]. But it is precisely in that fact that the danger lies. In contrast to the inherently adversarial relationship between a suspect and a policeman, the relationship between a probationer and the officer to whom he reports is likely to incorporate elements of confidentiality, even friendship. Indeed, many probation officers deliberately cultivate such bonds with their charges. The point should not be overstated; undoubtedly, few probationers are entirely blind to the fact that their probation officers are 'peace officer[s], . . . allied, to a greater or lesser extent, with [their] fellow peace officers.' *Fare v. Michael C.*, 442 U.S. 707, 720, 99 S.Ct. 2560, 2569, 61 L.Ed.2d 197 (1979). On the other hand, many probationers develop "relationship[s] of trust and confidence" with their officers. *Id.*, at 722 []. Through abuse of that trust, a probation officer can elicit admissions from a probationer that the probationer

would be unlikely to make to a hostile police interrogator. [*Murphy*, 465 US at 459-460 (Marshall, J., dissenting).]

Although we are mindful of this Court's previous unpublished decisions in *Stokes* and *Littlejohn* that do not apply *Miranda* to parole officers, we are persuaded that the better rule is that articulated by the *Deaton, Marrs*, and *Roberts* courts and adhered to by the other jurisdictions listed.

The rationale for the suppression of statements elicited during a custodial interrogation by a law enforcement officer who does not adhere to *Miranda* is to "combat" the "inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." *Miranda*, 384 US at 467; see also *Williams*, 244 Mich App at 539. Such "inherently compelling pressures" exist in the relationship between a parolee and a parole officer. Indeed, this Court has recognized that "both parolees and probationers are under heavy psychological pressure to answer inquiries made by their supervising officers." *People v Faulkner*, 90 Mich App 520, 524; 282 NW2d 377 (1979) (quotation marks and citations omitted). This heavy psychological pressure exists because of the unique relationship between a parolee and parole officer.

On the one hand, the parolee-parole officer relationship often becomes a relationship of trust and confidence, as does the probationer-probation officer relationship addressed by Justice Marshall in *Murphy*. See *Murphy*, 465 US at 459-460 (Marshall, J., dissenting). As a parolee develops trust and begins to confide in a parole officer, the parole officer is more likely to elicit from the parolee incriminating statements that the parolee would likely not make to a police interrogator.

On the other hand, the parolee-parole officer relationship is adversarial. A parole officer is an agent of the state. Generally, as a condition of parole, a parolee is obligated to report to and answer his or her parole officer's questions to avoid the revocation of parole. See generally *Faulkner*, 90 Mich App at 524-525 (noting that the director of a half-way house was required to give *Miranda* warnings before interrogating the defendant when the defendant was not free to refuse to answer the director's questions). If a parole officer has reasonable grounds to believe that a parolee has violated the conditions of his or her parole, MCL 791.239 provides the officer with statutory authority to arrest the parolee. Cf. *Anderson*, 209 Mich App at 534 (holding that a South Carolina juvenile corrections officer supervisor was not required to give *Miranda* warnings to the defendant before he confessed to involvement in two shootings because the officer did not have authority to arrest or detain). Thus, when a parole officer questions an in-custody parolee in a circumstance that is likely to elicit an incriminating response, the parolee is "assuredly . . . faced with a phase of the adversary system and . . . not in the presence of [a] perso[n] acting solely in his interest." See *Estelle*, 451 US at 467 (quotation marks and citation omitted). In *Estelle*, such adversarial questioning necessitated the use of *Miranda* safeguards by a court-ordered psychiatrist who examined a defendant and ultimately testified during the penalty phase of the defendant's trial:

> That [defendant] was questioned by a psychiatrist designated by the trial court to conduct a neutral competency examination, rather than by a police officer, government informant, or prosecuting attorney, is immaterial. When [the psychiatrist] went beyond simply reporting to the court on the issue of competence and testified for the prosecution at the penalty phase on the crucial issue of

[defendant's] future dangerousness, his role changed and became essentially like that of an agent of the State recounting unwarned statements made in a postarrest custodial setting. *During the psychiatric evaluation, [defendant] assuredly was "faced with a phase of the adversary system" and was "not in the presence of [a] perso[n] acting solely in his interest."*

\* \* \*

. . . Because [defendant] did not voluntarily consent to the pretrial psychiatric examination after being informed of his right to remain silent and the possible use of his statements, the State could not rely on what he said to [the psychiatrist] to establish his future dangerousness. If, upon being adequately warned, [defendant] had indicated that he would not answer [the psychiatrist's] questions, the validly ordered competency examination nevertheless could have proceeded upon the condition that the results would be applied solely for that purpose. [*Estelle*, 451 US at 467-468 (citation omitted; emphasis added) (italicized alterations in original).]

Furthermore, when a parole officer subjects a parolee to a custodial interrogation, there is always the possibility that the parole officer's questioning will lead to a criminal prosecution. The existence of such a possibility, the Supreme Court held, necessitated the use of *Miranda* safeguards by an internal revenue agent:

It is true that a 'routine tax investigation' may be initiated for the purpose of a civil action rather than criminal prosecution. . . . But tax investigations frequently lead to criminal prosecutions, just as the one here did. . . . And, as the investigating revenue agent was compelled to admit, *there was always the possibility during his investigation that his work would end up in a criminal prosecution.* We reject the contention that tax investigations are immune from the Miranda requirements for warnings to be given a person in custody. [*Mathis*, 391 US at 4 (emphasis added).]

Accordingly, given the heavy psychological pressure on a parolee to respond to a parole officer's questions the parolee would not otherwise do so freely, see *Miranda*, 384 US at 467; *Faulkner*, 90 Mich App at 524; *Deaton*, 468 F2d at 544, we hold that a parole officer is a law enforcement officer for purposes of *Miranda*. Statements made by a parolee to a parole officer during a custodial interrogation are inadmissible in a subsequent trial if the parolee invoked the right to counsel before questioning.[4] Therefore, we conclude that the statements defendant made to Evans while he was in custody were inadmissible at trial and that the trial court erred by denying defendant's motion to suppress.

### D. HARMLESS ERROR

A preserved constitutional error occurring during the presentation of the case to a jury, i.e., a nonstructural error, is not grounds for reversal if the error was harmless. *People v Miller*, 482 Mich 540, 559; 759 NW2d 850 (2008); *People v Anderson (After Remand)*, 446 Mich 392, 406; 521 NW2d 538 (1994). A preserved constitutional error is harmless if it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *People v Hyde*, 285 Mich App 428, 447; 775 NW2d 833 (2009) (quotation marks and citations omitted). "There must be no 'reasonable possibility that the evidence complained of might have contributed to the conviction.' " *Id.*, quoting

---

[4] We emphasize that we do not address whether the statements would be admissible in a subsequent parole revocation hearing. We note, however, that the Supreme Court has stated that "the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." *Morrissey v Brewer*, 408 US 471, 480; 92 S Ct 2593; 33 L Ed 2d 484 (1972); see also *People v Hardenbrook*, 68 Mich App 640, 644-646; 243 NW2d 705 (1976).

*Anderson*, 446 Mich at 406; see also *Chapman v California*, 386 US 18, 23; 87 S Ct 824; 17 L Ed 2d 705 (1967).

In addition to eliciting Evans's inadmissible testimony, the prosecution presented evidence that defendant smoked Marlboro cigarettes, which was the brand of cigarettes that the robber told the cashier to give him. Defendant's brother testified that defendant returned home on the night of the robbery wearing clothes that matched the description of the clothes worn by the robber and with $152. The $152 included a $2 bill, which corresponded to the money that the robber stole from the gas station. Defendant's brother reported defendant to the police. Moreover, the prosecution presented evidence that defendant frequently wore a University of Michigan fleece pullover and a University of Michigan hat that matched the description of the pullover and hat worn by the robber.

Notwithstanding this evidence of defendant's guilt, there remains a "reasonable possibility" that defendant's statements to Evans "might have contributed to the conviction." See *Anderson*, 446 Mich at 406 (quotation marks and citation omitted). The gas-station cashier was unable to identify defendant as the robber. Although defendant's brother testified against him, the defense introduced evidence of the brother's prior convictions both to impeach the brother and also as a basis for arguing that the brother committed the robbery and falsely accused defendant. Moreover, in both his opening and closing statements, the prosecutor emphasized the importance of Evans's testimony regarding defendant's incriminating statements. In his opening statement, the prosecutor said, "[M]ost importantly, you will hear that the Defendant confessed to someone that he did this armed robbery." And in his closing argument,

the prosecutor described Evans as "probably the most crucial" witness. The prosecutor's statements underscore the importance of defendant's incriminating statements in the prosecution's case and demonstrate a reasonable possibility that defendant's incriminating statements might have contributed to his conviction. See *id.*

Accordingly, we conclude that the trial court's failure to suppress defendant's statements to Evans was not harmless error beyond a reasonable doubt. Therefore, we reverse defendant's conviction and remand for a new trial.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

OWENS and SHAPIRO, JJ., concurred with BECKERING, P.J.